**BANKERS TRUST COMPANY,**
**Plaintiff-Appellee,**

v.

**PUBLICKER INDUSTRIES, INC.,**
**Defendant-Appellant.***

**No. 779, Docket No. 80–7895.**

United States Court of Appeals,
Second Circuit.

Argued March 25, 1981.
Decided May 1, 1981.

* *Editor's Note:* The opinion of the United States Court of Appeals, Ninth Circuit in *Richland County Association For Retarded Citizens v.* *Donovan,* published in the advance sheets at this citation (641 F.2d 1361), was withdrawn from bound volume at the request of the Court.

Richard W. Brewster, New York City (David W. O'Connor, Moses & Singer, New York City, of counsel), for plaintiff-appellee.

Joel B. Harris, New York City (Joseph H. Weiss, Weil, Gotshal & Manges, New York City, Ian R. Gilbert, Markfield, Sheller & Solomon, P.C., New York City, of counsel), for defendant-appellant.

Before OAKES and MESKILL, Circuit Judges, and SAND, District Judge.*

OAKES, Circuit Judge:

Appellant, Publicker Industries, Inc., seeks to overturn a judgment of the United States District Court for the Southern District of New York, Thomas P. Griesa, Judge, entered upon a jury verdict in a diversity case. The jury awarded appellee Bankers Trust Company approximately $430,000, the amount of an agreed upon finder's fee for Bankers Trust's participation in arranging the sale of Publicker's alcoholic beverage division—principally the Inver House Scotch Whisky brand—to Standard Brands, Inc. Ordinarily the issues

* Of the United States District Court for the Southern District of New York, sitting by designation.

raised here would not warrant discussion in a full length opinion. The points of law involved are well established and the facts, read in the light most favorable to Bankers Trust, as they must be after a jury verdict in its favor, clearly warrant recovery of the fee, which was earned after Bankers Trust had, in the words of Publicker's president (as testified to by the director of mergers and acquisitions at Bankers Trust), "done a wonderful job" and "performed [their] duty well." But we will discuss the issues raised because of Bankers Trust's application for double costs, damages for delay, and attorney's fees under 28 U.S.C. §§ 1912, 1927, and Federal Rule of Appellate Procedure 38.[1]

Publicker's "Memorandum" on appeal makes seven arguments. Each will be briefly discussed in the order in which they are made.

1. Publicker first claims that the trial court erred as a matter of law in permitting Bankers Trust's principal witness, Mary Jo Zandy (whom the Publicker "Memorandum" refers to as "a junior employee," but who was in fact a vice president specializing in beverage and food industries acquisitions in Bankers Trust's mergers and acquisitions group), to use testimonial notes, specially prepared for trial and without a formal foundation. The simple answer to this claim, given by Judge Griesa in denying Publicker's motion for judgment notwithstanding the verdict or for a new trial, is that Zandy's "testimonial notes" were merely a chronology. They included little of the substance of her testimony, and the use of them was permitted after Zandy had indicated that they were prepared from records and correspondence "to enhance my memory since a lot of this happened two years ago," a use which was within the broad discretion of the trial court to allow. There is no required, ritualistic formula for finding exhaustion of memory. *See Goings v. United States*, 377 F.2d 753, 760–61 & n.11 (8th Cir. 1967); *Thompson v. United States*, 342 F.2d 137, 140 (5th Cir.), *cert. denied*, 381 U.S. 926, 85 S.Ct. 1560, 14 L.Ed.2d 685 (1965); 3 J. Wigmore, *Evidence* § 765 (Chadbourn rev. 1970). *See generally* Fed.R.Evid. 612.

In making its argument, Publicker relies on *NLRB v. Federal Dairy Co.*, 297 F.2d 487 (1st Cir. 1962), where the court was "shocked" that a witness had read from a prepared manuscript whose nature was misrepresented to the trial examiner, and counsel had then argued that a witness "has the absolute right to use anything to refresh his recollection." *Id.* at 488. The court in that case nevertheless granted enforcement of the NLRB order challenged, noting that "it is not of such stuff that appeals are made." *Id.* at 489. That court also stated the general rule that a witness' memory must be exhausted before his recollection may be refreshed by a document, but pointed out that the purpose of the rule is to avoid having testimony improperly suggested to the witness. *Id.* at 488–89 & n.3. There

---

1. 28 U.S.C. § 1912 provides:

Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs.

28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs.

Fed.R.App.P. 38 provides:

If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

We recognize that this court, in denying double costs under Rule 38 in *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 704 n.20 (2d Cir. 1978), stated: "We cannot in good conscience characterize as 'frivolous' an appeal that has provoked so extended an affirmance as the one just concluded." However, it is to be emphasized here that each of Publicker's arguments for reversal is addressed in this opinion solely for the purpose of demonstrating the frivolous nature of the appeal.

was no impermissible suggestiveness in the instant case. So far as appears the witness referred to the chronology only two or three times, and a comparison of the Zandy testimony with the chronology demonstrates clearly that she was not, as Publicker suggests, "reading from a script."

Publicker further argues for reversal on the basis that "the trial court made clear at the very beginning of Ms. Zandy's testimony that inquiry into the foundation for her use of the chronology of events would not be tolerated," making it futile to cross-examine her about it. But we find no such ruling, certainly not counsel's statement that "I would like to know if the witness can testify first without this or if she is using this document to refresh her recollection," and the court's response, "Let's not worry about that, please. Go ahead." Publicker's counsel was in no way prevented on cross-examination from delving into Zandy's memory or her need to use the chronology. Although at one point Publicker's counsel indicated that he wished to move for production of the records underlying the chronology, after the court stated that it wished the application to be made out of the presence of the jury since it was a "discovery request," the application was never made.

Publicker also rather weakly contends that its cross-examination of Zandy in respect to the chronology, as provided for in Federal Rule of Evidence 612,[2] was restricted, but fails to point out any such instances in which questions on relevant points were not allowed. Counsel for Publicker questioned Zandy both as to her sources for the document and as to facts noted in it. Publicker was permitted to inspect the chronology, but chose not to have it introduced into evidence for the jury to see.

The foregoing is the strongest of Publicker's seven arguments for reversal.

■ 2. Publicker next contends that the trial court erred in dismissing its counterclaim for an alleged violation of its "right to publicity." This claim apparently was based on Bankers Trust's publication in the *Wall Street Journal* of an advertisement mentioning Bankers Trust's handling of the Publicker-Standard Brands deal as one of six mergers and acquisitions in which it had participated in August 1979. On the record below, when Publicker's counsel was asked to identify his theory of law on the counterclaim, he properly disclaimed reliance on section 51 of the New York Civil Rights Law, given its application only to living persons. But as his "best theory" he produced only one, inapposite case, *Electrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 161 N.E.2d 197, 190 N.Y.S.2d 977 (1959), an unfair competition-misrepresentation case which gave the district court nothing with which to work. While we would be justified in affirming the dismissal on this ground alone, we additionally fail to see that Publicker has stated any claim at common law or could establish any damages, since Bankers Trust, by truthfully naming Publicker as one of its clients, did not appropriate Publicker's name in a way that infringed any economic interest of Publicker.[3]

---

**2.** Fed.R.Evid. 612 provides in relevant part:

> [I]f a witness uses a writing to refresh his memory for the purpose of testifying, either—
> (1) while testifying, or
> (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

**3.** The other cases now cited by Publicker, *e. g.*, *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2d Cir.), *cert. denied*, 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343 (1953), involved a prominent person's economic interest in authorizing advertisements using his name or likeness, and the defendant's appropriation of the person's name for the defendant's own benefit. The New York state courts, however, have created an exception to this tort of invasion of the right

3. Publicker argues that the trial court's charge respecting the credibility of the key witnesses was prejudicial error. It claims, by way of post-trial affidavits of its counsel, that Zandy was a nervous witness while Publicker's president, Robert Leventhal, was calm on the stand. In light of this, the standard charge bearing on credibility, as set forth in the margin,[4] is faulted in Publicker's "Memorandum" on appeal as one-sided. No challenge was made to this portion of the charge before the jury retired, however, so the objection was not preserved for appeal. Fed.R.Civ.P. 51.[5]

Publicker also argues that the court's inquiries of Mr. Leventhal, while the latter was being examined by counsel for Bankers Trust, involved improper ridicule and embarrassment:

Q. Did anything happen in the month of April 1979 to make you more flexible about your price and your terms for the liquor business?

A. More flexible?

MR. WEISS: Objection. There was no foundation he was unflexible.

THE COURT: Overruled.

A. What do you mean by "flexible"?

THE COURT: I think you know what is meant by flexible. Do you not know the word?

THE WITNESS: I know the word. I don't know whether he means as to price or segmentation.

THE COURT: The witness doesn't understand the question. He doesn't know what flexible means.

THE WITNESS: I know what it means.

We think that Publicker's argument is lacking in merit, especially in light of Judge Griesa's subsequent comment that "I was a little too abrupt with Mr. Leventhal ... but I think the jury ought to disregard any comments of mine." This colloquy was certainly not on a par with the trial judge's comments on witness credibility which were condemned in *Quercia v. United States*, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), and, as such, the incident here did not constitute prejudicial error. A federal trial judge need not simply be a tennis linesman, calling the ball either in or out. *See also Herron v. Southern Pacific Co.*, 283 U.S. 91, 95, 51 S.Ct. 383, 384, 75 L.Ed. 857 (1931).

4. Publicker next argues that the court unduly restricted the testimony of its "principal witness," one Abraham Schecter, who, Publicker claims, had really brought Standard Brands and Publicker together. Schecter, as the last witness, was scheduled to arrive and to testify at four o'clock on a Thursday afternoon. When he did not arrive, the court, instead of treating the evi-

of publicity for "incidental use." *See, e. g., Namath v. Sports Illustrated*, 48 A.D.2d 487, 488, 371 N.Y.S.2d 10, 11 (1st Dep't 1975) ("[t]he use of plaintiff's photograph was merely incidental advertising of defendants' magazine in which plaintiff had earlier been properly and fairly depicted"), *aff'd mem.*, 39 N.Y.2d 897, 352 N.E.2d 584, 386 N.Y.S.2d 397 (1976); *Booth v. Curtis Publishing Co.*, 15 A.D.2d 343, 350, 223 N.Y.S.2d 737, 744 (1st Dep't) (no claim "so long as the reproduction was used to illustrate the quality and content of the periodical in which it originally appeared"), *aff'd*, 11 N.Y.2d 907, 182 N.E.2d 812, 228 N.Y.S.2d 468 (1962). This exception would probably cover the case at bar.

4. The relevant portion of the jury charge reads:
How do you assess credibility?
First of all you observe the demeanor of the witnesses. That is the first step. Does a

witness appear straightforward, candid? Does a witness appear otherwise? But that is not the end of the story.
There are people who are good actors. They will appear very straightforward, but they are sometimes not telling the truth. There are other people who will appear very nervous, very shaky, and yet they are telling the truth.

5. Fed.R.Civ.P. 51 provides in relevant part:
No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

dence as closed, put the case over until Friday morning, suggesting that counsel "cut" the evidence "to the bone" and have Schecter testify for no more than half an hour. Publicker's counsel said, "We intend to make it brief, your Honor." This is nothing more than routine trial handling, and is fully within the court's discretion to control the presentation of evidence. *See United States ex rel. Nelson v. Follette*, 430 F.2d 1055, 1059 (2d Cir. 1979), *cert. denied*, 401 U.S. 917, 91 S.Ct. 899, 27 L.Ed.2d 818 (1971). Moreover, Schechter's testimony covered all points counsel wanted to make. The court did not cut the testimony short. No suggestion was made post-trial either to the district court or to us as to what Schechter might have testified to had he had more time. Indeed, there was no objection taken to any of the court's actions with reference to the witness Schechter, and counsel for Bankers Trust did not even find it necessary to cross-examine this witness. In short, Publicker's argument is at best shallow, at worst a sham.

■ 5. Publicker claims that Bankers Trust's summation was improper in that the word "you" was used ten times in six sentences,[6] making a personal appeal to the jury. Publicker cites *Klotz v. Sears, Roebuck & Co.*, 267 F.2d 53 (7th Cir.), *cert. denied*, 361 U.S. 877, 80 S.Ct. 141, 4 L.Ed.2d 114 (1959), which involved a plaintiff's attorney asking the jurors to award the amount of money that *they* would want had *they* lost one of their eyes. Those statements were in effect pleas to the sympathy of the jury and, as such, were prejudicial. *Id.* at 54–55. The statements here, in contrast, were an appeal to the jurors' common sense and were perfectly proper. Nor, again, was objection made at trial.

■ 6. Publicker claims that the district court's charge concerning Bankers Trust's contractual obligations under the finder's fee agreement was erroneous, because the court "charged the jury that it was not necessary for Bankers Trust to bring the parties together." The portion of the charge quoted in Publicker's brief and relied upon to make this argument is set out in the margin.[7] However, Publicker's quote is selective, omitting a key phrase within the section quoted as well as the two paragraphs preceding and the two paragraphs following that section.[8] When the charge is

---

6. What would *you* report to the boss if Standard Brands had declined and expressed future interest in Inver House? Wouldn't *you* want to put it in the best possible light? . . .

    *     *     *     *     *     *

    What would *you* have done if *you* talked with Whitacre on May 8? Would *you* have not told Leventhal about it? . . .

    *     *     *     *     *     *

    . . . What would *you* talk about if *you* were the head of the department and the deal had just jelled? *You* are asked to submit a comfort letter and *you* are not going to talk about fee even though *you* know that there have been some rumblings in June that there may have been a dispute?

(Emphasis added.)

7. [I]t is not necessary for Bankers to literally bring parties together . . . . The introduction, this service of introducing, can consist of giving information to a prospective purchaser and perhaps going back and forth between the seller and the purchaser in some way to get together and arrive at a transaction.

    The elision was of the words "in the sense of arranging a physical meeting or getting on a joint phone call or anything like that." This type of elision, changing the meaning of the quote, is misleading at best.

8. With these critical additions, the charge reads as follows:

    So this is a claim based on contract language which has the crucial words about Bankers Trust introducing a prospective purchaser, and then reference to the fact that there must be a closing or a consummation of a transaction.

    This means that, in order to earn a fee under this agreement, Bankers must introduce a prospective purchaser, and this introducing must lead to the consummation of a transaction.

    With respect to the word "introduce" or "introduces", it is not necessary for Bankers to literally bring parties together in the sense of arranging a physical meeting or getting on a joint phone call or anything like that. The introduction, this service of introducing, can consist of giving information to a prospective purchaser and perhaps going back and forth between the seller and the purchaser as long as this introduction leads the seller and the

viewed in its proper context it is quite clear that it was correct under New York law on finder's fees. *See Minichiello v. Royal Business Funds Corp.*, 18 N.Y.2d 521, 527, 223 N.E.2d 793, 796, 277 N.Y.S.2d 268, 272 (1966) ("It is possible for a finder to accomplish his service by making only two phone calls and, if the parties later conclude a deal, he is entitled to his commission."), *cert. denied*, 389 U.S. 820, 88 S.Ct. 41, 19 L.Ed.2d 72 (1967).

■ 7. Finally, Publicker argues on appeal that the jury's verdict was not supported by the evidence. This argument is stated in conclusory terms and is answered by the documentary evidence, the testimony of Zandy, that of Hunt Whitacre, director of corporate development for Standard Brands, who confirmed Zandy's testimony, and that of Richard Berman, director of mergers and acquisitions at Bankers Trust, who testified as to Leventhal's admissions. The lack of substance to Publicker's argument is emphasized by the statement in its "Memorandum" on appeal, "[n]ot only is the jury's verdict not supported by the evidence, it is against the weight of the evidence," coupled with the follow-up that "Ms. Zandy may have wanted the jury to believe that she was a maiden wronged, but no amount of sympathy for any witness can supply evidence that simply isn't there." This conclusory argument in a case involving two versions of the events (but a considerable amount of documentary evidence supporting Bankers Trust's assertions) is hardly aided by the derogation of the wit-

ness, Zandy, as in the irrelevant statement quoted above.

■ There is no doubt whatsoever that the judgment must be affirmed. In determining whether the appeal is frivolous, the only question of any substance in this case, we have gone over the seven arguments and found them, respectively: (1) directed against the trial judge's exercise of discretionary powers; (2) made with no relevant supporting law presented to the trial court or to us; (3) going to one colloquy between witness and judge that was invited by the witness' momentary evasiveness and, at worst, was cured; (4) going to the trial judge's power to run a case, here exercised favorably on behalf of appellant; (5) totally lacking in merit; (6) quoting a portion of the jury charge out of context and with a misleading elision; and (7) conclusory in nature and highly implausible. We believe that the appeal is frivolous, and that it was brought without the slightest chance of success, largely constituting an argument with the verdict of a jury which believed Bankers Trust's witnesses, supported as they were by documentary evidence, and disbelieved Publicker's.

We can only conclude that Publicker either was badly advised to appeal or was determined to delay the payment of the money owed under the judgment on the finder's fee contract to the last possible moment, in light of the differential between the legal rate of interest and the interest that may be earned at present rates in the money market or elsewhere. We wish we could call this sort of dilatory

---

purchaser in some way to get together and arrive at a transaction.

So the service that Bankers is required to perform to recover under this contract is the service of introduction. This involves the concept of initiating, setting wheels in motion, something like that. Bankers is not required to carry out negotiations or draft contracts, only to make an introduction, and Bankers can earn a fee if this introduction leads to a consummated transaction even if the dealings following the introduction are performed by other persons.

So I have told you two things: There must be something that would fit within the definition of introduction but that doesn't have to be a literal physical bringing the people together at a lunch or a meeting or a joint phone call. It can consist of giving information about the proposed sale to a prospective purchaser going back and forth or similar activities as long as this sets the wheels in motion, it initiates activity, and so that the parties ultimately come together and do a deal.

action to the attention of the Congress and the state legislatures, especially at a time of overcrowded court dockets. It is an imposition ultimately upon the American taxpayer that the low legal interest rates may encourage appeals solely for the purpose of delaying the payment of money judgments.

In this case, the appeal has been an imposition upon appellee Bankers Trust, an imposition that may be relieved by the assessment, pursuant to 28 U.S.C. §§ 1912, 1927, and Federal Rule of Appellate Procedure 38, of (1) double costs of the appeal and (2) damages in the sum of either $10,000 or the appellee's expenses (other than costs of the appeal) including its counsel fees, whichever sum is less. *See Bank of Canton, Ltd. v. Republic National Bank of New York*, 636 F.2d 30 (2d Cir. 1980) (per curiam); *Acevedo v. INS*, 538 F.2d 918 (2d Cir. 1976) (per curiam). The costs and damages are assessed against appellant Publicker and its counsel; they may decide as between themselves who should bear the ultimate responsibility. Any differences over damages or counsel fees may be resolved by the district court.

Judgment affirmed; cause remanded.