**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**POTAMKIN CADILLAC
CORPORATION,
Defendant-Appellant.**

**No. 463, Docket 82–6155.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 5, 1983.

Decided Jan. 7, 1983.

See also, D.C., 533 F.Supp. 331 and 2 Cir., 689 F.2d 379.

Philip I. Beane, New York City, for defendant-appellant.

Jonathan A. Lindsey, Asst. U.S. Atty., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Thomas D. Warren, Asst. U.S. Atty., New York City, on brief), for plaintiff-appellee.

Before KEARSE, WINTER, and PRATT, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Potamkin Cadillac Corporation ("Potamkin") appeals from an order of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, *Judge,* denying Potamkin's motion pursuant to Fed.R.Civ.P. 60(b)(2) to vacate the court's judgment of February 24, 1982, against Potamkin on grounds of newly discovered evidence. Finding no merit whatever in the appeal, we affirm, and, pursuant to 28 U.S.C. § 1912 (1976) and 28

U.S.C. § 1927 (Supp. V 1981), we award double costs and attorneys' fees to appellee United States, to be paid by Potamkin's attorney, Philip I. Beane, personally.

A. *Background*

The present action was brought on September 3, 1980, by the United States to compel Potamkin to file a report with the Federal Trade Commission ("Commission") as required by a special order of the Commission pursuant to § 6(b) of the Federal Trade Commission Act, 15 U.S.C. § 46(b) (1976), and to assess against Potamkin a statutory penalty, pursuant to 15 U.S.C. § 50 (1976), of $100 for each day of its failure to file the required report after April 12, 1980.[1] On May 8, 1981, Potamkin sent a partial report to government counsel which was treated as an acceptable filing. Thereafter the government moved for summary judgment seeking, *inter alia,* to recover the $100 penalty for each of the 391 days from April 12, 1980 to May 8, 1981. The government's motion was granted, and final judgment in the government's favor for $39,100 was entered on February 24, 1982. As discussed in Part C below, the judgment was affirmed on appeal. *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379 (2d Cir.1982) ("*Potamkin I* ").

While the direct appeal was pending, Potamkin moved in the district court for an order pursuant to Rule 60(b)(2) vacating the judgment on the ground of "newly discovered" evidence. Potamkin submitted an affidavit asserting that in fact Potamkin had filed the required report with the Commission in September 1980, and that no penalty should have been levied against it for failure to file after that time.[2] The affidavit of Marvin Schell, Potamkin's controller until the end of 1980, stated that within two weeks after September 9, 1980, the date on which Potamkin was served in the present action, Schell had sent the Commission, by certified mail, with return receipt request-

1. The government had sent Potamkin a notice of default which was received by Potamkin on March 11, 1980.

2. The motion also sought, with no evidentiary basis, the opportunity to reargue Potamkin's contention that it had filed the required report in April 1980.

ed, a report in compliance with the Commission's order. Potamkin also proffered two affirmations by Beane, its attorney. The first Beane affirmation, dated April 26, 1982 ("First Beane Aff."), stated that it was only recently that Beane had been able to locate Schell. It, also stated, as if to bolster Schell's statements, that in the fall of 1980 Schell had informed Beane that a report had been filed in September 1980 and had provided Beane with a copy:

> I can state as my own knowledge that I was informed by MR. SCHELL at the time that this proceeding was served upon the defendant that the report would be filed shortly thereafter, and that it was filed shortly thereafter, and that the copy of the report that I had supplied to the U.S. Attorney was a copy given to me by MR. SCHELL within two (2) weeks of that date, . . . .

(First Beane Aff. ¶ 15.) The second Beane affirmation, dated May 20, 1981 [*sic*][3] ("Second Beane Aff."), reiterated that Beane had been informed in September 1980 that Schell had filed a report in September 1980: "The [September 1980] report, I was told, was filed by MR. SCHELL with the Federal Trade Commission, and I did know this all along." (Second Beane Aff. ¶ 5.)

The government stated that the FTC had no record of ever having received the alleged September 1980 report. Potamkin produced neither a return receipt nor a copy of the report.

The district court denied Potamkin's motion to vacate the judgment.

### B. *The Merits of the Rule 60(b) Motion*

The merits of the present appeal need little discussion. The standard for appellate review of denial of a Rule 60(b) motion, nowhere recognized in Potamkin's brief on appeal, is whether or not the district court abused its discretion. *E.g., Audiovisual Publishers, Inc. v. Cenco, Inc.,* 580 F.2d 50, 52 (2d Cir.1978). We find no such abuse.

In order to succeed on a motion pursuant to Rule 60(b)(2), the movant must present evidence that is "truly newly discovered or . . . could not have been found by due diligence." *Westerly Electronics Corp. v. Walter Kidde & Co.,* 367 F.2d 269, 270 (2d Cir.1966). The evidence offered by Potamkin as to the alleged September 1980 filing fails to meet either test. The first Beane affirmation stated that Schell had informed Beane contemporaneously of the September 1980 filing. The second Beane affirmation confirmed that Beane had known "all along" of this filing. Schell was employed by Potamkin for several months after September 1980 and since he supposedly had provided Beane with both information as to the filing and a copy of the report, it would be the height of whimsy to characterize Schell's present statements as "truly newly discovered" evidence.

Further, Schell's affidavit is silent as to why his statement was not available earlier, and Beane's affirmations offer only faint, and hardly credible, enlightenment. No explanation whatever was offered as to why Schell's evidence was not memorialized prior to his departure from Potamkin. And Beane's only explanation as to why he was not able to reach Schell between the end of 1980 and April 1982 was, "[t]he telephone number that I had was a wrong number, which was never answered." (First Beane Aff. ¶ 6.) Beane stated that he could not locate Schell "by any other means," (*id.*), but did not specify what other means, if any, were attempted.

Given the feebleness of Beane's proffer of "due diligence," and Beane's acknowledgement that he had known of the alleged September 1980 filing all along, it was well within the district court's discretion to reject the explanations and to consider the "evidence" not newly discovered.

### C. *Costs of this Appeal*

We regard Potamkin's appeal from the denial of its Rule 60(b) motion as entirely frivolous—a quality plainly shared by the motion itself—and we are constrained to

---

**3.** The contents of this affirmation make clear that it was a 1982 document.

note that it follows close on the heels of Potamkin's direct appeal from the final judgment, which we also found to be "utterly without legal merit," and "frivolous within the meaning of Rule 38, Fed.R.App. P." *Potamkin I,* at 380. Having found in *Potamkin I* that Potamkin's assertions in opposition to the government's summary judgment motion were so lacking in substance and substantiation that it must have been obvious to Beane that they were inadequate to defeat summary judgment, *id.* at 381, we concluded as follows:

> Potamkin's appeal amounts to "little more than a continued abuse of process" which raises no "colorable legal or factual basis for the relief sought." *Muigai v. INS,* 682 F.2d 334, 337 (2d Cir.1982). It is totally lacking in merit, framed with no relevant supporting law, conclusory in nature, and utterly unsupported by the evidence. It was, we believe, "brought without the slightest chance of success," *Bankers Trust Co. v. Publicker Industries, Inc.,* 641 F.2d 1361, 1367–68 (2d Cir.1981), an imposition on the government which is forced to defend against the appeal and on the taxpayers who must pay for that defense.

*Id.* at 382. Accordingly, in *Potamkin I,* we assessed double costs plus $500 in attorneys' fees. The assessment was made against Potamkin and Beane jointly and severally, in the belief that Potamkin and Beane were in the best position to determine which of them should bear responsibility for the frivolous appeal.

▮ The quality of the two appeals and the inconstancy of the representations and arguments made by Beane in Potamkin's behalf at the trial and appellate levels now convince us that the conclusion of the litigation has been unduly delayed, and the proceedings unreasonably multiplied, and that Beane must bear the responsibility. For example, in October 1981, Beane refused to disclose his knowledge of the Schell evidence of a September 1980 filing. At that time he represented to the government that Potamkin had filed only one report with the Commission, that that had been done more than three years earlier, and that Beane

had no information as to the filing or which Potamkin employee had filed it. Beane's 1982 affirmations and his statements at oral argument on this appeal, however, disclose that he was aware in October 1981, and earlier, of the alleged September 1980 filing. Similarly, although Beane claims to have known all along that Schell filed the September 1980 report, Beane did not mention this either to the district court in opposition to the government's summary judgment motion or to this Court on appeal in *Potamkin I.* His statements at oral argument of the present appeal suggested that he had made tactical decisions not to argue the alleged September 1980 filing in these earlier proceedings. Further, whereas Beane's proffer to the district court of his "due diligence" in trying to locate Schell consisted solely of a statement that he had been trying the wrong telephone number, Beane stated to us on oral argument that the reason he had been unable to locate Schell until April 1982 was that Schell had been in a mental institution.

Under 28 U.S.C. § 1912, the Court has discretion to award to the prevailing party double costs and damages for delay caused by the appeal. In addition, under 28 U.S.C. § 1927

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*See Bankers Trust Co. v. Publicker Industries,* 641 F.2d 1361, 1367–68 (2d Cir.1981) (appellant and its counsel assessed double costs and up to $10,000 for appellee's other expenses, including counsel fees, for bringing frivolous and dilatory appeal); *Hastings v. Maine-Endwell Central School District,* 676 F.2d 893 (2d Cir.1982) (district court instructed to consider whether all or part of costs and attorneys' fees, caused by blatantly baseless appeal, should be assessed against appellant's attorney personally).

The baseless and inconstant character of the arguments advanced throughout this litigation on behalf of Potamkin through the letters, affirmations, and oral representations of Beane compel us to conclude that Beane has unduly delayed the termination of this litigation and has caused the proceedings to be unreasonably and vexatiously multiplied. Accordingly, on this appeal, we assess double costs plus $500 in attorneys' fees, to be paid by Philip I. Beane, personally.

The order of the district court is affirmed.