**Lawrence B. ALKOFF, Plaintiff,**

v.

**Anthony R. GOLD, Defendant.**

**No. 84 Civ. 4235 (RO).**

United States District Court,
S.D. New York.

Dec. 6, 1988.

See also 611 F.Supp. 63.

David H. Gikow, Lehman & Gikow, P.C., New York City, for plaintiff.

Mitchell A. Stein, Lieberman, Rudolph & Nowak, New York City, for defendant.

## MEMORANDUM AND ORDER

OWEN, District Judge:

In mediating discovery between quarrelsome litigants, Magistrate Buchwald imposed Rule 11 sanctions on defendant for improperly having sought sanctions against plaintiff. Magistrate Buchwald's order was completely justified under the circumstances and hereby is made the order of this Court, based on the thorough consideration in her March 31, 1988 Memorandum, which is here set forth in full.

[order attached].

So ordered.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, United States Magistrate.

Defendant has moved for an order, pursuant to Rules 11 and 37 of the Federal Rules of Civil Procedure and Local Civil Rule 43 "striking the complaint in this action, setting an immediate hearing to determine and hold plaintiff and his counsels in contempt, and ordering plaintiff to pay defendant's legal fees believed to be in an amount in excess of $50,000.00."

A brief recitation of the facts is necessary to place this motion in context. This action arises from plaintiff's claim that he was defrauded by defendant into releasing claims to PC Magazine, which plaintiff asserts was a corporate opportunity of Intersoft Corporation ("Intersoft") which at the time of the formation of PC Magazine was jointly owned by plaintiff and defendant. In addition to earlier misstatements and nondisclosures, the complaint alleges misstatements and non-disclosures in connection with a financing of Intersoft which closed on May 7, 1982.

In connection with these financing negotiations, plaintiff was represented by Lawrence Budish, Esq. of the then firm of Gelberg & Abrams. The document from which this discovery dispute originates is a subpoena addressed to Mr. Budish at Gelberg & Abrams, dated October 21, 1986. That subpoena requested in relevant part:

all documents in his possession or otherwise in the possession of Gelberg & Abrams relating to proposals, drafts, or contracts in connection with financing of Intersoft Corp., including, but not limited to those circulated to other (non-clients), billing sheets, and the like.

At his deposition on October 30, 1986, Mr. Budish was represented by an attorney in his firm. The record is not entirely clear as to who, Gelberg & Abrams or plaintiff's present counsel, made the initial selection of relevant and/or arguably privileged documents although plaintiff's affidavit suggests that Gelberg & Abrams performed the initial screening process. The record is clear, however, that the documents were in the custody of Gelberg & Abrams prior to the final document production session.

Following litigation over the assertion of the attorney-client privilege, a document production session was set for December 1, 1987. According to David Gikow, one of plaintiff's attorneys, while in the process of producing documents he

was surprised to discover that the file folder contained not only all of the notes described in paragraph 12 of plaintiff's Supplemental List, but also certain additional pages of notes apparently not listed in plaintiff's Supplemental List. I myself called this to Mr. Stein's attention, and I told him that I would speak to Mr. Lehman with respect to this matter. After speaking with Mr. Lehman, I informed Mr. Stein that these additional notes were not listed on the Supplemental List because they are irrelevant to this action and because they were not requested in defendant's subpoena dated October 21, 1986 directed to Gelberg & Abrams (defendant's Exhibit C).

Affidavit of David H. Gikow, sworn to on February 2, 1988 ("Gikow Aff."), ¶ 6.

Thereafter, in an effort to avoid further dispute but at the same time to prevent a waiver of plaintiff's relevance and privilege objections, Gikow prepared a Stipulation and Order which if signed by defendant's counsel, Mitchell A. Stein, would have resulted in immediate production. Stein refused to sign the stipulation which he claims falsely described the circumstances of the documents' discovery and which he asserts is evidence that other documents should have been included in earlier privilege lists. Because of the controversy surrounding the proposed Stipulation, we quote it in full:

IT IS HEREBY STIPULATED AND AGREED, by the undersigned attorneys to the parties to this action, that

WHEREAS, the Court by Memorandum Order dated October 8, 1987 and Memorandum Order dated November 12, 1987 directed that certain documents from the files of Gelberg & Abrams as to which plaintiff has asserted an attorney-client privilege be produced for discovery and inspection to the defendant, without determining whether such documents are privileged or admissible at trial; and

WHEREAS, on December 1, 1987 such documents were produced to the defendant for inspection, copies of which will be made and delivered to the defendant with appropriate markings; and

WHEREAS, in the course of such production it was determined that certain other documents from the files of Gelberg & Abrams have not been produced or identified on any attorney-client privilege list, since Gelberg & Abrams and plaintiff believe that they are irrelevant [sic] to this action and not called for or subject to production (the "additional documents"); and

WHEREAS, defendant has requested the production of the additional documents; and

WHEREAS, the parties seek to resolve this dispute concerning the additional documents without seeking the intervention of the Court and without waiving any and all rights which they may have

with respect to these documents; it is agreed as follows:

(1) Plaintiff shall produce or arrange for the production by Gelberg & Abrams of the additional documents at the parties' earliest convenience;

(2) Plaintiff preserves all of his rights and shall not be deemed to have waived any attorney-client privilege or relevance objections applicable to the additional documents;

(3) Defendant preserves all of his rights and shall not be deemed to concede that the additional documents are irrelevant or subject to attorney-client privilege; and

(4) All questions regarding admissibility or privilege with respect to the additional documents shall be determined by the Court.

Affidavit of Mitchell A. Stein, sworn to January 6, 1988 ("Stein Aff."), Ex. AK.

As noted, Stein declined to sign the stipulation or negotiate its modification and receive the documents. The documents at issue apparently concern a refinancing of Intersoft in the fall of 1982, subsequent to the transaction which gave rise to this litigation. Instead, Stein brought this motion seeking dismissal of the complaint, a finding that plaintiff's counsel is in contempt of court, and legal fees of at least $50,000. Obviously, awarding the defendant the relief sought would result in a total victory in this case.

We find Stein's decision to make this motion rather than to negotiate a modification of the stipulation, and/or sign the stipulation, obtain the documents and then determine whether the documents were irrelevant as plaintiff's counsel asserts or make a motion if warranted is conduct violative of 28 U.S.C. § 1927, i.e., sanctionable conduct by an attorney which "so multiplies the proceedings in any case unreasonably and vexatiously" that he "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See, e.g., United State v. Potamkin Cadillac,* 697 F.2d 491 (2d Cir.), *cert. denied,* 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983); *see, generally, Colucci v. New York Times Co.,* 533 F.Supp. 1011, 1013–14 (S.D.N.Y.1982). Likewise, Stein's motion papers violate Rule 11 of the Federal Rules of Civil Procedure.

Defendant's motion is improper for three reasons: first, a careful review of the record submitted does not support a conclusion that plaintiff acted in bad faith such as would justify Stein's course of action; second, Stein's allegations that plaintiff and his counsel submitted many misleading documents to the Court and otherwise is premised upon an unfounded and illogical assumption about discovery proceedings, and third, Stein's papers themselves are misleading. We address each of these reasons in turn.

Initially, we find that there is no reason to conclude that plaintiff acted in bad faith, although we believe that applying the "appears to be reasonably calculated to lead to the discovery of admissible evidence" standard, it would have been more prudent to disclose the documents withheld which concerned a refinancing of Intersoft months after the buyout which is at issue here.[1] Plaintiff's counsel's good faith is demonstrated by the undisputed fact that he disclosed the documents on his own[2] at the production session on December 1, 1987. Another, equally compelling reason to conclude that neither Gelberg & Abrams nor plaintiff's current counsel withheld the documents in bad faith is that the existence of some documents on the subject of a recapitalization of Intersoft in the fall of 1982 must have been known to defendant's firm, Lieberman, Rudolph & Nowak since they represented the defendant in connection with those discussions.

Proceeding then upon the premise that plaintiff's counsel was acting in accordance

---

1. Arguably, the documents could relate to the calculation of damages.

2. The unmade, but potential, argument that Stein had observed the documents before Gikow made any statement about them would not take into account Gikow's ability to sanitize the files in advance had he intended to hide the documents' existence.

with a good faith conclusion that the documents withheld were irrelevant, there is no basis for the diatribe presented by defendant's counsel's motion papers. For all the xeroxed paper submitted by defendant, what the dispute comes down to is whether plaintiff's lawyers were compelled by the Federal Rules of Civil Procedure to identify documents which in their good faith judgment they had determined to be irrelevant. We know of no authority for an affirmative response to this question, nor are we aware of any tradition or custom requiring counsel to list, on privilege lists or otherwise, all documents determined to be non-responsive to a discovery demand. Indeed, carrying defendant's argument to its logical extension, a corporate party would be required to list thousands, if not millions of documents, every time it was served with a document request.

If, as we have concluded, there was no obligation to list documents determined in good faith to be irrelevant, the entire premise of defendant's motion collapses. Plaintiff was not obligated to include the "irrelevant" documents on privilege lists or otherwise produce the documents in response to court orders. Moreover, a representation that all documents have been produced is only a representation that all relevant documents have been produced. Thus, plaintiff's counsel's assertion that he was misled into concluding that there were no other documents in existence is either contrived or the consequence of naivete.

The third reason we are seriously troubled by defendant's motion is the approach taken by the motion itself which exaggerates and distorts the record in the case. The theme of defendant's motion is that plaintiff has violated almost a dozen orders of the Court and consequently is deserving of the extreme sanction of dismissal. Apart from our substantive disagreement with defendant's position, there is no basis for the assertion that plaintiff violated al-

most a dozen court orders. One of those so-called orders, number 4, is a proposed order submitted by plaintiff that was never signed by the court. And again "orders" 5 through 8 are at best directions from Judge Cedarbaum at a single conference and "order" number 8 is simply a restatement of "order" number 5. In short, defendant's counsel's assertion that plaintiff has violated almost a dozen court orders is unsupported by the record. Moreover, in the context of a motion which seeks to hold plaintiff and his "counsels" in contempt of court, it is incumbent upon the moving party not to mislead the Court in any way.

In sum, defendant's counsel had the opportunity to receive the documents in dispute upon an agreement that their disclosure did not waive plaintiff's position that the documents were in the first instance irrelevant and secondarily privileged. It was not a condition of disclosure that defendant waive any sanctions motion it might determine it had. However, in lieu of this sensible approach, defendant's counsel apparently concluded that he would endeavor to attempt a sanctions motion which would dispose of the case without a resolution on the merits.[3] And, moreover, the motion that defendant made was neither well-grounded in law or fact and was itself misleading. This burdensome motion violates the purpose of our local rules which require negotiated efforts to resolve discovery disputes. It is an impermissible imposition both on the plaintiff and the Court. Accordingly, in accordance with 28 U.S.C. § 1927, plaintiff shall submit an affidavit in support of its request for the excess costs, expenses and attorney's fees reasonably incurred by defendant's counsel's unreasonable conduct in making this motion. If requested by defendant's counsel, a hearing will be held prior to the assessment. Plaintiff shall also produce the documents previously withheld on the ground of irrelevance, although such pro-

**3.** Similarly, defendant's February 1, 1988 motion for the entry of judgment by default filed after plaintiff did not respond to this motion on the designated return date of January 26, 1988 is yet another example of an exaggerated response to an ill-defined problem. Given that

this contempt motion had been discussed at a conference without reference to a schedule for the submission of papers, a call to chambers inquiring as to the Court's needs or desires with regard to an appropriate schedule would have been the more measured approach.

duction shall not, in accordance with Judge Daranco's earlier attorney-client privilege decisions, constitute a waiver of the privilege.

IT IS SO ORDERED.