**Harilal PATEL, M.D., Plaintiff,**

v.

**LUTHERAN MEDICAL CENTER, INC., Defendant.**

**No. CV–88–2050.**

United States District Court, E.D. New York.

Oct. 17, 1991.

**594**

Hockert & Flamm, New York City, for plaintiff.

Wolff, Seminara & Mitherz, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

On July 15, 1991 this court by Memorandum and Order granted defendant's motion for summary judgment dismissing the complaint, and on July 22, 1991 a final judgment was entered. Plaintiff now moves under Rules 52(b) and 59(e), Fed.R.Civ.P., "to set aside and vacate the fact-findings set forth in the Memorandum and Order"; under Rules 60(b)(1), (2), (3), and (6) to set aside and vacate the final judgment; and under Rule 3(j), Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, for reargument of the summary judgment motion. The grounds he alleges are (1) that plaintiff has presented new facts which were not previously set forth; (2) that the omissions were in error but were excusable; and (3) that defendant has misrepresented critical facts to the court in its papers.

### The New Affidavits

Plaintiff filed two affidavits in support of the Rule 52(b), 59(e), and 60(b) motions, the second revising the first. Defendants filed a responsive affidavit. Under Local Rule 3(j), affidavits may not be filed without leave of the court, and following a request by plaintiff I explicitly denied leave by written order on July 22, 1991. As set forth below, the affidavits shall be disregarded in connection with that motion. Their contents is described herein for such application as they have to the other motions.

Familiarity with the July 15, 1991 Memorandum and Order here is presumed. By way of summary, however, the undisputed facts presented to the court with the motion for summary judgment were that plaintiff, a successful surgeon in private practice held, in addition to full attending privileges at Lutheran Medical Center ("LMC" or "the Hospital"), the part-time $30,000 per year position of Chief of Ambulatory Surgery at a community clinic run by LMC. Prior to 1986, LMC recruited new doctors through a teaching residency program, many of whom stayed in the community and provided treatment to its patients. In 1986, however, LMC lost its residency program, and, by virtue at least of its location, realized difficulty in attracting new doctors. As a recruiting device, LMC dissolved the position of Chief of Ambulatory Surgery and created in its place three new part-time clinic staff positions paying $10,000 per year. Their hope was that the $10,000 salary would be attractive to new doctors establishing private practices and might encourage some who might not otherwise have considered it to settle in the vicinity. Reference was made in a draft internal Hospital memorandum to the need of a mechanism for attracting "young" surgeons, and a similar reference was made in a letter written by the Hospital's director of surgery. Plaintiff was terminated and the three positions were filled

by doctors aged 38, 40, and 42 who were known to plaintiff through their prior affiliation with LMC and who at the time enjoyed attending privileges at the Hospital.[1] Summary judgment was granted defendant because plaintiff offered no evidence in rebuttal of its nondiscriminatory rationale for the dissolution of plaintiff's position.

The basis of plaintiff's current motions is that, born and raised in India, his English language skills are poor and he had difficulty communicating his ideas to his attorney. Had he "underst[ood] the nature of these legal proceeding," he would have "[brought] to the attention of my attorneys certain important factual matters." Patel Amended and Restated Aff., ¶ 2. The supposedly new relevant factual matter was that the three surgeons had prior affiliation with the Hospital as attending surgeons, and that no "turnover" in the positions has taken place. In support of the assertion of prior affiliations, plaintiff submits as his Exhibit A a memorandum which indicates the dates at which two of the three new doctors had been appointed to the Hospital staff. That memorandum had been "Exhibit B" to the affidavit of Miles Kucker, M.D. submitted by defendant with the motion for summary judgment. The remainder of plaintiff's affidavit is essentially reargument of the merits of the summary judgment motion. Plaintiff claims that prior to the July 15, 1991 decision he did not understand the nature of defendant's proffered reason for the dissolution of his position, but that his new affidavit should now effectively demonstrate that it was pretextual, and that summary judgment should have been denied.

Defendant, by its President and Chief Executive Officer George Adams, submits an opposing affidavit. He first states that plaintiff has no language problem. Adams Aff. ¶ 2. He then states that the attending surgeons were chosen to fill the three new positions because none were well established and one of them, Dr. Khan, had expressed intention to leave the Hospital and move to a different community. *Id.*

¶ 6(d). He states that the salaried nature of the clinic positions serves as a significantly stronger incentive than a grant of attending status. Moreover, plaintiff was well aware of the background of these surgeons prior to the motion; in fact, he trained them. Adams also explains that while LMC still does not have a full residency program, in October 1990 by affiliation with Maimonides Medical Center four surgical residents from Maimonides are now being trained at LMC. They have not rotated new surgeons into the three clinic positions because of the difficulty of recruiting new surgeons and because the need has become less urgent. *Id.* ¶¶ 6(i)–(j).

## DISCUSSION

1. *Propriety of moving under 52(b) and 59(e):*

■ Rule 52, Fed.R.Civ.P., provides, in part:

Findings By the Court

(a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon.... Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56 or any other motion except as provided in Rule 41(b).

(b) Amendment. Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for new trial pursuant to Rule 59.

.    .    .    .    .

Rule 59(e) reads:

Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

He draws no salary, nor necessarily obtains patients, from the hospital.

---

1. It may be noted that an "attending" physician in this context is one who utilizes a hospital's facilities to treat patients whom he bills directly.

Some courts have ruled that Rules 52(b) and 59(e) are not the appropriate mechanism for seeking reconsideration of a determination of a motion for summary judgment. One court wrote:

> [Rules 52(b) and 59(e)] apply to judgments entered after a trial and do not apply to judgments entered pursuant to a motion for summary judgment, as in the present case. Therefore, I will consider this a Motion for Reconsideration pursuant to Rule 20(g) of the Local Rules of the Eastern District of Pennsylvania.

*Hill v. Bethlehem Steel Corp.*, 729 F.Supp. 1071, 1072 n. 1 (E.D.Pa.1989), *aff'd*, 902 F.2d 1560 (3d Cir.1990). Other courts have rejected such motions to the extent they were brought under Rule 52(b) but not 59(e). *See All Hawaii Tours Corp. v. Polynesian Cultural Center*, 116 F.R.D. 645 (D.Haw.1987) (determinations of fact on summary judgment "are not findings of fact in the strict sense ... A motion to amend findings under Rule 52(b) does not lie where findings of fact are unnecessary under Rule 52(a)."), *rev'd in part on other grounds, aff'd in part without pub'd op.*, 855 F.2d 860 (9th Cir.1988). Most courts, however, including those in this circuit, allow a motion to amend a grant of summary judgment to be brought under Rule 59(e). We will proceed, therefore, to the merits. *See, e.g., Northern Cheyenne Tribe v. Hodel*, 842 F.2d 224 (9th Cir.1988) (motion for reconsideration of summary judgment appropriately brought under Rule 59); *Kort v. Western Surety Co.*, 705 F.2d 278, 280–81 (8th Cir.1983) (upholding trial court's power, under Rule 59(e), to rescind prior grant of summary judgment); *Larry Spier, Inc. v. Bourne, Co.*, No. 90 Civ. 1065, slip op., 1991 WL 51146 (S.D.N.Y. Apr. 3, 1991) (considering defendant's motion to amend judgment under Rule 59(e) after grant summary judgment even though "there is some force to the suggestion" that "the substance of plaintiff's motion does not fall within the rule."); *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 739 F.Supp. 209 (S.D.N.Y.1990) (vacating summary judgment upon motion under Rule 59(e) and Local Rule 3(j)).

2. *"Newly Discovered Evidence"*

Whether moving on the basis of presentation of new evidence under Rule 59(e) or Rule 60(b)(2), the standard for "newly discovered evidence" is the same. C. Wright and A. Miller, 11 *Federal Practice and Procedure* 182, § 2859 (1973 ed.) ("The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2), and decisions construing Rule 59 in this context are authoritative in construing Rule 60(b)(2).").

Rule 60(b)(2) provides for relief from final judgment on the basis of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Under Rules 59(e) and 60(b)(2) evidence which was "in the possession of the party before the judgment was rendered ... is not newly discovered and does not entitle him to relief." *Id.* at 182–83. *See United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir.), *cert. denied*, 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1379 (1983); *Burzynski v. Travers*, 111 F.R.D. 15, 17 (E.D.N.Y.1986).

The evidence sought to be admitted here is not "newly discovered," as plaintiff's counsel acknowledged at oral argument. It was not only within the knowledge of plaintiff prior to the original motion, but documentary support of that evidence, the memorandum submitted with the current motion as plaintiff's Exh. A, had been served with defendant's motion papers with the summary judgment motion. This fact renders fulfillment of the "due diligence" component superfluous here, since the evidence *was* in plaintiff's possession. However, even if plaintiff's alleged language barrier somehow prevented the evidence from being presented in what plaintiff would consider a manner most favorable to his case, he has not demonstrated—in light of plaintiff's continual presence in this country and his 25–year successful career as a private practitioner, teacher, and hospital administrator—that due diligence would not have rendered the evidence available.

### 3. *Local Rule 3(j)*

As noted earlier, leave to submit affidavits in support of plaintiff's Rule 3(j) motion was denied. Accordingly, plaintiff's affidavits did not explicitly purport to be offered in support of the Rule 3(j) motion, and they are disregarded in connection with this motion.[2] Motions for reargument under Rule 3(j) are granted only when new facts come to light or when it appears that controlling precedents have been overlooked. *McMahan & Co. v. Donaldson Lufkin & Jenrette Security Corp.*, 727 F.Supp. 833 (S.D.N.Y.1989); *Weissman v. Fruchtman*, 658 F.Supp. 547 (S.D.N.Y.1987). Plaintiffs have not endeavored to identify controlling precedent which the court overlooked, save an unexplained citation to one case, distinguished in the margin.[3] Nor does plaintiff's affidavit, were it to be considered, identify any

**2.** Indeed, had they been offered to support the Rule 3(j) motion, to that extent they would have been disregarded in any event. *See Collins Development Corp. v. Marsh & McLennan, Inc.*, No. 90 Civ. 4675, slip op., 1991 WL 135605 (S.D.N.Y. July 18, 1991); *Chambless v. Masters, Mates & Pilots Pension Plan*, 697 F.Supp. 642, 644–45 (S.D.N.Y.1988), *aff'd in part, rev'd in part on other grounds*, 885 F.2d 1053 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990).

**3.** Plaintiff refers the court to *Binder v. Long Island Lighting Co.*, 933 F.2d 187 (2d Cir.1991). The plaintiff in that case worked in various high ranking technical and managerial positions at LILCO from 1955 to 1987. He was forced to retire when his position was eliminated by a new "hands-on" Chairman and Chief Executive Officer one of whose goals was the trimming of LILCO's "bureaucracy." Plaintiff advised LILCO's Vice President of Human Resources that he wished to be placed in another position within LILCO. However, no position was ever offered because, while positions for which he was qualified were available, that officer determined that plaintiff's high qualifications and experience rendered them inappropriate for him. The district court granted defendant's motion for summary judgment.

The Second Circuit found that the record showed no reason to doubt defendant's proffered business justification for the elimination of plaintiff's position. However, plaintiff asserted that he was qualified for many other open positions within LILCO which were filled by younger people and which he was not offered. Citing *Taggart v. Time, Inc.*, 924 F.2d 43, 48 (2d Cir.1991), the court held that an employer's rebuttal that an applicant is "overqualified" might be considered pretextual by a trier of fact and reversed the district court's ruling. The only difference between *Binder* and *Taggart*, the court said, was that unlike the plaintiff in *Taggart*, the plaintiff in *Binder* had made no express statement that he would accept a particular job at a lower salary or grade level.

The case at bar fundamentally differs from these cases. First, plaintiff does not claim the Hospital considered him overqualified for the new staff positions. Second, plaintiff himself expressly stated in a deposition that he would *not* have accepted one of the new staff positions:

Q: Did you ever try to obtain a job at LMC as a staff surgeon employee?
A: No.
Q: Would you take that position if offered to you?
A: No.
Q: Would you have taken the position if offered to you in 1987?
A: No. I'm a full-time surgeon at Lutheran Medical Center and it will be humiliating because of the position I was fired upon.

\* \* \* \* \* \*

Q: ... Am I correct in assuming that the only job you wanted at LMC was the job of Clinical Supervisor in the family health care center, or something better than that?
A: Yes.

Patel Depo., July 24, 1990, reproduced in Seminara Reply Aff. in Support of Summary Judgment Motion ¶ 7. Even without this statement, the theory that plaintiff would have accepted such a position would be fundamentally inconsistent with plaintiff's posture throughout this entire dispute. Plaintiff, who derived a salary from his professional corporation of over $250,000 each year 1985 through 1988, *see id.* ¶ 15(i), wanted essentially to retain the title of Chief of Ambulatory Surgery or Chief of the Clinic:

I did not need to be eliminated. LMC emphasizes that, since I did not want a mere staff job, none was offered to me. But this does not address why LMC did not consider retaining me, *along* with such staff persons, to perform certain functions associated with being Chief of the Clinic for which I was better suited. I could have kept my title and performed the various non-medical, administrative and medical supervisory functions associated with this position in the Clinic, even if it meant taking a reduction in pay. Although I would have agreed to do this, LMC never offered me this option.

Patel Amended and Restated Aff. ¶ 13.

LMC never offered him the option because the clinic positions became recruiting devices and plaintiff was a well-established surgeon with strong and long-standing ties to the Hospital. As stated in the court's July 15, 1991 Memorandum and Order, plaintiff never offered any evidence suggesting that defendant's explanation was pretextual.

new facts which have come to light since the motion was argued. The motion is thus denied.

4. *"Mistake, inadvertence, surprise, or excusable neglect"*

█ Rule 60(b)(1) provides for relief from judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." Plaintiff argues that his neglect was his and his attorney's failure to marshall all the facts within his knowledge in opposing the motion for summary judgment. His excuse is his difficulty expressing himself in English. However,

[a] defeated litigant cannot set aside a judgment [under Rule 60(b)(1) ] because of his failure to interpose a defense that could have been raised at trial, or because he failed to present on a motion for summary judgment all of the facts known to him that might have been useful to the court.

C. Wright and A. Miller, 11 *Federal Practice and Procedure* 163, 173, § 2858 (1973 ed.). This is exactly what plaintiff is attempting to do now, and the motion necessarily fails. *See also Mas Marques v. Digital Equip. Corp.,* 637 F.2d 24, 29 (1st Cir. 1980) (Rule 60(b)(1) motion denied despite submission of relevant affidavit, since no explanation was given for failure to present facts earlier).

5. *Fraud*

█ Plaintiff states he is also moving under Rule 60(b)(3), which provides relief from a judgment upon a showing that it was procured by fraud or misrepresentation. No such showing has been made here. In fact, as pointed out earlier, the document plaintiff relies on here to demonstrate the Hospital's prior association with the three doctors who replaced him was submitted by defendant with its summary judgment motion papers. Relief under this rule is thus denied as well.

6. *"Clause (6)"*

█ Under 60(b)(6), relief from a judgment is available for "any other reasons justifying relief." Clause (6) may be relied upon only in exceptional circumstances.

*Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 864, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988); *United States v. Cirami,* 563 F.2d 26, 32 (2d Cir. 1977). Wright and Miller explain:

In general, relief is given under clause (6) in cases in which the judgment was obtained by the improper conduct of the party in whose favor it was rendered or the judgment resulted from the excusable default of the party against whom it was directed under the circumstances going beyond the earlier clauses of the rule. The court then considers whether relief under clause (6) will further justice without affecting substantial rights of the parties.

\* \* \* \* \* \*

... [C]lause (6) and the first five clauses are mutually exclusive and ... relief cannot be had under clause (6) if it would have been available under the earlier clauses.

C. Wright and A. Miller, 11 *Federal Practice and Procedure* 213, § 2858 (1973 ed.). As plaintiff has demonstrated no misconduct or excusable default on the part of defendants, and indeed no exceptional circumstances, relief under clause (6) is not available and is denied. *See, e.g., United States v. Cirami,* 563 F.2d at 34 (relief under Rule 60(b)(6) available where attorney neglected case because of psychological disorder); *Vindigni v. Meyer,* 441 F.2d 376 (2d Cir.1971) (relief available because of complete disappearance of plaintiff's attorney).

7. *Defendant's Motion for Fees*

Defendant has moved for attorney's fees with citation to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.,* and several cases interpreting provisions in those statutes permitting, under certain circumstances, such an award. Those provisions aside, Rule 11, Fed.R.Civ.P., commands that upon a finding that a pleading was not "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,"

"sanctions *shall* be imposed." *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 709 (2d Cir.1990); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

██ A cursory review of so much as a federal procedure treatise would have revealed that this motion was utterly without legal foundation. Plaintiff submitted three memoranda of law with this motion—a Memorandum, a Revised Memorandum, and a Reply Memorandum—presenting some 25 pages of discussion without citation to any authority which would support his motion. The memoranda and affidavits are also devoid of any factual basis to support the present motions, save that rejected above as wholly and patently insufficient.

This motion was a clear abuse of the mechanisms by which reconsideration and amendment of judgment may be achieved in appropriate cases.

> The proponent of such a motion is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use Rule 3(j) to advance new facts and theories in response to the court's ruling. The purpose of the rule is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.

*McMahan & Co. v. Donaldson Lufkin & Jenrette*, 727 F.Supp. 833 (citations and internal quotation marks omitted). An appropriate sanction under Rule 11, Fed. R.Civ.P., shall therefore be awarded. *See, e.g., Collins Development Corp. v. Marsh & McLennan, Inc.*, No. 90 Civ. 4675, slip op., 1991 WL 135605 (S.D.N.Y. July 18, 1991) (awarding Rule 11 sanctions against plaintiff who, warned of the strict requirements of Local Rule 3(j), filed its motion to reargue based on the "discovery" of new evidence which was by plaintiff's own admission within his possession prior to the filing of the original motion).

Defendant shall submit an affidavit setting forth the reasonable expenses incurred because of the filing of this motion, including an up-to-date record of counsel's hours and rates. Such affidavit shall be filed on or before October 31, 1991. The plaintiff may file and serve a response on or before November 15, 1991, and a hearing, if requested by either party, will be held on November 22, 1991 at 9:30 a.m.

SO ORDERED.