NORTHERN CHEYENNE TRIBE,
Plaintiff-Appellant,

v.

Donald P. HODEL, Secretary of the Interior, et al., Defendants-Appellees,

Western Energy Co.; Wesco Resources, Inc.; and Thermal Energy, Inc., Defendants-Intervenors-Appellees.

No. 86–4389.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 10, 1987.

Decided March 15, 1988.

As Amended July 11, 1988.

Steven H. Chestnut and Marc D. Slonim, Seattle, Wash., for plaintiff-appellant.

F. Henry Habicht, II, Jacques B. Gelin, Michael W. Reed, Robert L. Klarquist and William R. Murray, Jr., Washington, D.C., Byron H. Dunbar, Billings, Mont., for defendants-appellees.

L.W. Peterson, Billings, Mont., for Wesco Resources, Inc., Stephen H. Foster, Billings, Mont., for Thermal Energy, Inc., James A. Poore, III and Gary L. Walton, Butte, Mont., for Western Energy, for defendants-intervenors-appellees.

Before WALLACE, NORRIS and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

The Northern Cheyenne Tribe (the Tribe) appeals from an amended injunction against the Secretary of the Interior (Secretary). The amended injunction is defended by the Secretary and by Thermal Energy, Inc. (Thermal), Wesco Resources, Inc. (Wesco), and Western Energy Co. (Western Energy). Jurisdiction exists under 28 U.S.C. §§ 1331 and 1362. We hold that the injunction should be modified further and remand for this purpose.

## BACKGROUND

In the aftermath of the Battle of Little Bighorn, the Northern Cheyenne moved to Montana. Virtually no white men inhabited the country. The land lay along no migration routes "and remained physically isolated until the 1950's." Then the first paved highway across the reservation was laid. E. Adamson Hoebel, *The Cheyenne Indians of the Great Plains* (1978) 124–125. In this beautiful environment, the Northern Cheyenne "retained much of their identity" as the people of the Morning Star. *Id.* at 131. The discovery of extensive coal deposits in the region produced a crisis for the Tribe. *Id.* at 132–133.

In 1982 the Secretary decided to offer to lease 2.24 billion tons of federal coal in the Powder River region of Montana and Wyoming. The eight Montana tracts border the Tribe's reservation on the north, east and south. The Tribe occupies 445,000 acres. The population of the reservation is approximately 4,300, of whom 85% are Indian. The predominant use of the land is cattle grazing.

The Secretary's decision was based on a final Environmental Impact Statement (EIS) which, except for occasional peripheral references, did not mention any impact on the Tribe. On April 15, 1982 the Tribe brought this action to enjoin the Secretary from proceeding with the leases without complying with federal law in such a way as to avoid, minimize, or mitigate adverse impacts of the leases on the Tribe.

On April 28, 1982 the Secretary proceeded with sale of the leases. The bidders were notified of the Tribe's suit and went ahead nonetheless. Thermal was the successful bidder for Tract M–54714; Wesco was the successful bidder for Tract M–54710; and Western Energy was the successful bidder on Tracts M–54711, M–54712, and M–54713.

On May 28, 1985 the district court granted the Tribe summary judgment and held that the decision to make the Montana leases violated the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq.;* the Federal Coal Leasing Amendments Act of 1976, 30 U.S.C. § 201 *et seq.;* and the responsibilities of the United States as trustee of the Tribe. The court held all leases issued as a result of the sale void.

Within 10 days of the original injunction, the Secretary moved to amend the judgment under Fed.R.Civ.P. 59. On October 7, 1985 the district court permitted Wesco, Thermal and Western Energy to intervene. In permitting intervention at this late date the court ruled the lessees must take the case as they found it "subject to the proceedings that have occurred prior to intervention. In other words, the Court will not relitigate the issue of the sufficiency of the EIS.... The only issue before the court, and hence the only issue in which intervention may be sought, is the appropriate remedy in this case."

On October 6, 1986 the district court amended its injunction to suspend but not void the leases to Thermal and Wesco. The suspension was to last until the Secretary prepared a supplemental EIS "addressing the cultural, social and economic impact of issuing coal leases near the Northern Cheyenne Indian Reservation." The lessees

were relieved of their obligations under the leases. Western Energy was permitted to go forward with mining on its leases of M–54711, M–54712, and M–54713, subject to the caveat that mining should immediately be halted if the Secretary found that it caused "significant socioeconomic impacts." The Secretary was directed at the completion of the supplemental EIS to decide whether or not to rescind all of the leases and whether to impose additional measures of mitigation if the leases stayed in force. The Tribe appeals from this amendment of the original injunction.

## ANALYSIS

1. The Tribe contends that the judgment of the district court was made after a trial on the record and that post-judgment motions could be made only under Fed.R. Civ.P. 59(a), so that the court lacked the power to amend the judgment under Fed.R. Civ.P. 59(e). The district court's determination that it had the power to amend its judgment pursuant to rule 59(e) is a conclusion of law. We review it de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Rule 59(e) provides a means whereby a district court may alter or amend its judgment. A motion for reconsideration of a summary judgment is appropriately brought under rule 59(e). *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). The district court expressly characterized its judgment as a summary judgment. The court did not resolve questions of fact, but decided as a matter of law that the proposed leases were in violation of federal requirements. The court had the power to amend the judgment under rule 59(e).

■ 2. The Tribe contends that Western Energy's motion for modification of relief constituted an untimely motion to alter or amend judgment under rule 59(e) since Western Energy filed the motion later than 10 days after entry of judgment. We strictly construe rule 59(e)'s ten-day limitation. *McConnell v. MEBA Medical and Benefits Plan*, 778 F.2d 521, 526 (9th

Cir.1985); and we review the district court's refusal to strike Western Energy's motion for modification of relief for an abuse of discretion. *Cf. Backlund* 778 F.2d at 1388 (review of denial of rule 59(e) motion for an abuse of discretion); *Supermarket of Homes, Inc. v. San Fernando Valley Board of Realtors*, 786 F.2d 1400, 1409 (9th Cir.1986) (review of motion to strike defenses under rule 12(f) for an abuse of discretion).

■ The Federal Rules of Civil Procedure do not expressly recognize "a motion for modification of relief." To classify it properly, we examine the nature of and the reason for the motion. Western Energy submitted the motion and supporting brief in response to the district court's order of October 7, 1985, which stated: "It is FURTHER ORDERED that Western Energy Company shall file a brief responding to the federal defendants' motion to alter or amend the judgment within fifteen (15) days of the filing of this order." Western Energy's response, in short, was not a rule 59(e) motion. It was a response to a timely motion of the federal defendants. The response did not have to comply with rule 59(e)'s ten-day limitation. The district court did not abuse its discretion in refusing to strike Western Energy's motion.

■ 3. We review the district court's decision on injunctive relief for abuse of discretion, application of erroneous legal principles, or clearly erroneous findings of fact. *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849 (9th Cir.1985). The Tribe argues that under the principles enunciated in *TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), we should conclude that Congress has balanced the equities under the Federal Coal Leasing Amendments Act and thereby mandated that district courts issue an injunction upon finding that the government is in violation. The Tribe seeks to have this court extend the principles of *Hill* and conclude that Congress has not only mandated that an injunction issue whenever the Coal Leasing Act is violated, but also that Congress has mandated that the injunction

void all activities, such as the leasing of federal land containing coal, undertaken in violation of the Act. The Secretary and the intervenors disagree and contend that Congress has not balanced the equities under the statute and that, therefore, the district retained its traditional equitable power to vindicate the objectives and requirements of the statute. *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

*Hill, Romero–Barcelo,* and *Village of Gambell* provide significant guidance in deciding whether Congress has balanced the equities under the statute and mandated an injunction. In *Hill,* the Court stated that generally courts retain discretion to fashion appropriate relief unless Congress has clearly demonstrated explicitly or implicitly that it has balanced the equities and mandated an injunction. *See Hill,* 437 U.S. at 173–74, 98 S.Ct. at 2291. In *Romero-Barcelo,* the plaintiff sued the Secretary of Defense and claimed that the Navy, while using an island off Puerto Rico's coast for weapons training, violated the Federal Water Pollution Control Act, 33 U.S.C. § 1251. The plaintiff argued that, as in *Hill,* Congress had balanced the equities under that act and, therefore, that the district court had to issue an injunction once it found the government in violation. The Court disagreed, stating that the "purpose and language of the statute under consideration in *Hill,* not the bare fact of a statutory violation, compelled" the conclusion that an injunction was mandatory in *Hill. Romero–Barcelo,* 456 U.S. at 314, 102 S.Ct. at 1804. In contrast, the Court pointed out that the statutory scheme now before it demonstrated that Congress did not intend to limit a court's remedy to an immediate prohibiting injunction upon finding a violation. *Id.* at 315–19, 102 S.Ct. at 1804–06. The Court concluded that the district court retained the equitable discretion to grant or deny injunctive relief. *Id.* at 320, 102 S.Ct. at 1807.

In *Village of Gambell,* the plaintiff argued that the defendant violated the Alaska National Interest Lands Conservation Act, 16 U.S.C. § 3120, when it sold oil and gas leases for federally owned lands on Alaska's continental shelf, and, that, therefore, it was automatically entitled to injunctive relief. The Court examined the statutory scheme and held that the act did not remove the district court's traditional equitable power in fashioning a remedy once a violation is established. *Village of Gambell,* 107 S.Ct. at 1403.

■ We accordingly focus "on the underlying substantive policy" that Congress designed the statute to effect. *Village of Gambell,* 107 S.Ct. at 1403. Nothing in the Act indicates that Congress intended to restrict the court's jurisdiction in equity. "The basic purpose" of the Act is "to provide a more orderly procedure for the leasing and development" of coal the United States owns, while ensuring its development "in a manner compatible with the public interest." H.R.Rep. No. 681, 94th Cong., 1st Sess. 8 (1975), *reprinted in* 1976 U.S. Code Cong. & Admin. News 1943, 1943. Congress's underlying substantive policy concern was to develop the coal resources in an environmentally sound manner. This purpose lays as much stress on the developing the coal resources as it does on the environmental effects of development. It is a purpose served without imposing an iron rule that an injunction will issue if the Act is violated. As Congress has not divested the district courts of their traditional equitable power, it logically follows that district courts have the discretion to deny or grant injunctive relief. *See Romero–Barcelo,* 456 U.S. at 320, 102 S.Ct. at 1807.

■ 4. The Tribe argues that the district court abused its discretion in amending the injunction to suspend, rather than to void, the leases. The Tribe contends that merely suspending the leases leads to the danger of "bureaucratic commitment" to the leases. *See Massachusetts v. Watt,* 716 F.2d 946 (1st Cir.1983). The Tribe essentially contends that the danger of bureaucratic commitment presents a type of irreparable harm that warrants an injunc-

tion voiding, not merely suspending, the leases.

Bureaucratic rationalization and bureaucratic momentum are real dangers, to be anticipated and avoided by the Secretary. But the difference between voiding the leases and suspending them does not create any major difference in the process that must now go on. We see no reason to suppose that the Secretary will feel greater commitment to the original project if the leases are not voided but held in abeyance until a new evaluation is made, especially as the injunction will now specifically direct the Secretary not to consider prior investments by the lessees when he reconsiders the lease sale. The decision based on a legally insufficient EIS counts for nothing. We assume the Secretary will comply with the law. As the Tribe failed to demonstrate any significant difference between voiding and suspending the leases, the district court did not abuse its discretion in amending the injunction to provide for the suspension of the leases. *Cf. Village of False Pass v. Clark,* 733 F.2d 605, 614–616 (9th Cir.1984).

5. The Tribe also contends that the district court abused its discretion in failing to consider the public interest before amending the injunction to suspend rather than void the leases. The record reveals no such consideration. The Tribe's point is well-taken.

■ In deciding whether to issue an injunction in which public interest is affected, a district court must expressly consider the public interest on the record. *American Motorcyclist Association v. Watt,* 714 F.2d 962, 965, 967 (9th Cir.1983); *see also Village of Gambell,* 107 S.Ct. at 1402, 1404. The failure to do so constitutes an abuse of discretion. *See American Motorcyclist,* 714 F.2d at 967. The district court should now rehear arguments and expressly consider the public interest in deciding whether to issue an injunction suspending rather than voiding the leases.

■ 6. There are two other defects in the injunction. First, the district court did not order the Secretary to comply with his own regulations concerning the competitive

leasing of federal coal rights. Under the Secretary's regulations on the competitive leasing of federal coal rights, coal deposits are to be "developed in consultation, cooperation, and coordination with ... Indian tribes...." 43 C.F.R. § 3420.0–2 (1987). Regional coal teams are to be "the forum through which initial leasing recommendations" are to be transmitted to the Secretary. *Id.* § 3420.2. The regional coal team in this case did not have input from the Tribe. A supplemental EIS will not cure this radical defect. The process was spoiled. It was an abuse of discretion not to order the Secretary to follow his own rules. Consequently, if the court decides to re-issue an injunction, the injunction must require the Secretary to follow his present own regulations and engage again in "activity planning" by which lease tracts are identified, ranked, analyzed, and selected. *Id.* § 3420.3–1, 2, 3, 4. The Secretary must equally be ordered to analyze the "site-specific potential environmental impacts" of each tract. *Id.* § 3420.3–4(c)(1).

■ Second, the injunction should have expressly prohibited the Secretary from considering the intervenors' financial interests in completing the EIS. In analogous circumstances we have specifically directed the Secretary not to consider the investments made on the basis of a defective EIS. *Cady v. Morton,* 527 F.2d 786, 798 (9th Cir.1975). A fortiori the investments should not be considered here when the lessees made their bids with full awareness of the Tribe's suit and chose to gamble on the EIS being adequate. Consequently, if the court decides to re-issue an injunction, the injunction should direct the Secretary not to consider the fact that the leases have been made and to direct him not to consider the investments made by the lessees.

■ 7. The Tribe also contends that it is entitled to a present injunction preventing the presently-permitted mining operations of Western Energy. Here the considerations are different because mining is going forward on the basis of a fundamentally flawed EIS. Even in these circumstances, however, we do not believe that

the court is compelled to issue an injunction without a balancing of the equities. A court's decision not to enjoin may not threaten the very existence of what Congress intended to preserve. See *TVA v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (injunction necessary to preserve habitat of the snail darter). But unless a statute "in so many words, or by a necessary and inescapable inference" has limited a court's equitable discretion, an injunction does not issue automatically on a showing that an environmental impact statement is defective. *Amoco v. Village of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 1403, 94 L.Ed.2d 542 (1987). Nothing in the Federal Coal Leasing Amendments Act of 1976, as we earlier concluded, imposes such a restriction on judicial discretion. See 30 U.S.C. § 201. The same conclusion holds as to the more general National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* Its high aim "to create and maintain conditions under which man and nature can exist in productive harmony," 42 U.S.C. § 4331, does not show a congressional intent to foreclose equitable balancing by a court enforcing its requirements.

The district court, however, engaged in its balancing of the equities on an inadequate record and to that extent abused its discretion. We cannot tell from that record what the costs would be to the Tribe, the public, and Western Energy from any particular resolution of the issue. The district court should now promptly hold an evidentiary hearing to determine these costs and then decide whether or not an injunction is appropriate. If the district court should determine that the threatened harm to the environment, including the cultural, social and economic cost to the Tribe, would be irreparable and that the balance of equities favors the Tribe, all mining shall be stayed until the Secretary completes his new review.

REVERSED and REMANDED with instructions to amend the judgment consistently with this Opinion and to hold an evidentiary hearing.