**NORTHERN CHEYENNE TRIBE, Plaintiff,**

v.

**Manuel LUJAN, Jr., Secretary of the Interior, et al., Defendants.**

**Civ. No. 82–116–BLG–JFB.**

United States District Court,
D. Montana,
Billings Division.

July 24, 1991.

Stephen Foster, Holland & Hart, Billings, Mont., for Internal Thermal Energy.

Thomas Ebzery, and Lawrence Peterson, Dorsey & Whitney, Billings, Mont., for Interv. Westco.

Urban Roth, Gary L. Walton, Butte, Mont., for Western Energy Co.

Fred Wagner, John Gregory, Gen. Litigation Section, Solicitors Office, Washington, D.C.

Steven Chestnut, & Mark Slonim, Ziontz Law Firm, Seattle, Wash., and Calvin Wilson, Lame Deer, Mont., for plaintiffs (Tribe).

Kris McLean, Asst. U.S. Atty., Butte, Mont., Doris Poppler, U.S. Atty., Billings, Mont., for defendants.

## MEMORANDUM OPINION AND ORDER

BATTIN, Senior District Judge.

Intervenors Thermal Energy Company ("Thermal") and Wesco Resources, Inc. ("Wesco") have moved the Court for an order (1) voiding their lease interests in federal coal, located adjacent to the Northern Cheyenne Reservation in southeastern Montana, and (2) seeking a refund of monies paid to the government to secure these lease interests. For the reasons set forth below, these Motions are granted.

### Facts and Procedural Background

The facts of this case are well-known to the Court and the parties, and they are succinctly summarized in several previous Memorandum Opinions issued by this Court and by the Ninth Circuit Court in *Northern Cheyenne Tribe v. Hodel*, 851 F.2d 1152 (9th Cir.1988). As a result, the background of the coal lease sale, and the various Court decisions arising from that sale, will not be discussed in detail. The Court shall refer only to those facts which are pertinent to the pending motions.

In April, 1982, the Secretary of the Interior ("Secretary") offered for lease various coal-bearing tracts in southeast Montana and northern Wyoming. At the time, the Northern Cheyenne Tribe (the "Tribe") sought a preliminary injunction to block the sale, based on the Secretary's failure to follow the National Environmental Policy Act ("NEPA"), and the Federal Coal Leasing Amendments Act of 1976 ("FCLAA"), and because the Secretary allegedly neglected his trust responsibilities to protect Tribal interests.

The Court denied the Tribe's request for a preliminary injunction, but preserved the Tribe's right to seek permanent relief. The coal lease sale took place in 1982, and is now known as the Powder River Coal sale. Prior to the commencement of the bidding, however, all potential purchasers were instructed about the pendency of the Tribe's challenge to the sale and were told that any coal leases acquired would be subject to the outcome of the litigation. The Secretary accepted Thermal's bid on the Cook Mountain Tract (Tract M–54714), and the Bureau of Land Management ("BLM") issued a lease to Thermal on May 19, 1983. In perfecting this lease, Thermal paid to the Secretary the following amounts:

| | |
|---|---|
| Bonus Payment | $2,670,000.00 |
| Rental Payment | 18,864.00 |
| Total | $2,688,864.00 |

Wesco submitted the winning bid for the Coal Creek lease (Tract M–54710), but the award of the lease was contingent upon Wesco's receipt of permission to mine from the surface owners. During 1983–1985, Wesco actively negotiated for this permission. To preserve its rights to obtain the lease, Wesco paid to the Secretary:

| | |
|---|---|
| Bonus Payment | $70,244.00 |
| Rental Payment | 3,099.00 |
| Total | $73,343.00 |

Both Thermal and Wesco contemplated opening new coal production operations on these tracts. To date, no coal has been produced.

On May 28, 1985, this Court granted the Tribe's motion for summary judgment and held that:

> the decision to make the Montana leases violated the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.;* the Federal Coal Leasing Amendments Act of 1976, 30 U.S.C. § 201 *et seq.;* and the responsibilities of the United States as trustee of the Tribe. The court held all leases issued as a result of the sale void.

*Northern Cheyenne Tribe,* 851 F.2d at 1154. After the Court voided the lease sales, Thermal, Wesco, and another successful bidder at the 1982 sale, Western Energy Company ("Western Energy"), petitioned the Court to intervene in the litigation in support of the government's Motion to Reconsider. The Court granted these petitions with a strict limitation: "[T]he applications for intervention are granted *for the limited purposes of reconsidering the relief granted and protecting the lessees' right of appeal.*" *See* Memorandum Opinion, at 2 (Oct. 8, 1985) (emphasis supplied). As the Ninth Circuit explained, the intervenors entered the case subject to the proceedings that had occurred prior to their intervention. The Court refused to relitigate the sufficiency of the environmental impact statement, for example, based on new arguments advanced by the intervenors. *Northern Cheyenne Tribe,* 851 F.2d at 1154.

In moving for reconsideration, the government and intervenors argued that the leases should be suspended, rather than voided, until the Secretary prepared a Supplemental Environmental Impact Statement ("SEIS") considering the impact of coal mining on the Tribe. The Court granted

this Motion to Reconsider on October 6, 1986, and suspended the leases, pending preparation of the SEIS and a decision by the Secretary, based on the SEIS, concerning whether the leases should be modified or cancelled to protect the Tribe. On appeal, the Ninth Circuit Court reversed and remanded the order suspending the leases and directed this Court to hold a hearing to determine whether it would best serve the "public interest" to void the leases, or to suspend them while the Secretary prepared the SEIS. *Northern Cheyenne Tribe,* 851 F.2d at 1157–58. This "public interest" hearing is now scheduled for September 23, 1991.

In the interim, the Department of the Interior issued a draft SEIS in June, 1989, and circulated it to the public for comment. The Department issued the final SEIS in June, 1990. The SEIS indicates that new coal development on both the Coal Creek Tract, held by Wesco, and the Cook Mountain Tract, held by Thermal, would have "significant" and sometimes "severe" social, economic, and cultural impacts on the Northern Cheyenne Tribe. *See* Draft Economic, Social, and Cultural Supplement, Powder River I Regional EIS, at 258–78 (Appendix B, "Tract Profile Package"). Despite the completion of the SEIS over a year ago, the Secretary has not taken any action, based on the information contained in the SEIS, to modify or cancel the leases, thereby minimizing the impacts of increased coal development on the Tribe. He is apparently waiting for this Court to rule on whether it is in the public interest to suspend or to void the leases, pursuant to the mandate of the Ninth Circuit Court.[1]

---

**1.** The Court is disturbed by the Secretary's inaction. In its Opinion of October 6, 1986, the Court ordered:

> "2. Upon completion of the supplemental EIS, the Secretary shall reconsider whether all leases ... should have been issued and whether additional mitigation measures should be imposed. If the Secretary concludes that the leases should not have been issued, he shall rescind them and halt all operations. If the Secretary concludes that the leases should be approved, he shall issue a decision supporting his conclusion and order reinstatement of the leases."

By failing to act on the conclusions contained in the SEIS, the Secretary is apparently impermissibly ignoring this aspect of the Court's order. The Ninth Circuit Court's opinion in *Northern Cheyenne Tribe,* which only concerned the proper remedy for the Secretary's failure to comply with NEPA, the FCLAA, and his trust responsibilities to the Tribe, does not in any way relieve the Secretary of his duty to comply with this Court's prior Order and to act on the conclusions contained in the SEIS.

Because of the Secretary's refusal to act and the glacial pace of this litigation, neither Thermal nor Wesco has seen any return on their investment in the coal leases. Nor do they anticipate that they will be able to commence mine development anytime soon, at least not without substantial and restrictive supplemental conditions on the leases to protect the Tribe. Meanwhile, the government retains and enjoys the benefit of the monies paid to secure the leases, pursuant to the 1982 sale. As a consequence of this long delay, the prospect of exceedingly lengthy litigation in the future, the uncertainty surrounding when, if ever, the Secretary will act on the SEIS, and the prospect of added restrictive conditions placed on any new mining activities, Thermal and Wesco now move the Court to void their lease interests and to compel the government to return their bonus and rental payments, as a matter of equity and fairness. The Tribe does not oppose these motions.

The Court has carefully considered the arguments, briefs, and supporting documents on file, and is now prepared to rule.

### Discussion

■ Before launching into an extended analysis of the merits of the parties' contentions, the Court notes two important contextual facts that will influence the outcome of the motions. First, the Court's original holding that the 1982 lease sales violated NEPA, the FCLAA, and the government's trust responsibilities to the Tribe has never been disturbed and was not addressed by the Ninth Circuit Court in *Northern Cheyenne Tribe*, which con-

cerned only the remedy for the defective lease sales. This holding stands today as the law of the case. Given the state of the record, therefore, the leases at issue in this case are not *void;* instead, the leases are *voidable* because of the government's failure to comply with its obligations under law.[2]

■ Second, the government and the Tribe are the primary litigants in this case, and the Tribe retains the benefit of a summary judgment ruling in its favor. The ultimate remedy and relief granted, therefore, should accrue to the benefit of the Tribe, not necessarily to the government or to the intervenors. Furthermore, the Court is mindful of the fact that the Secretary has a special trust relationship with the Tribe, rising to the level of a fiduciary responsibility. *See Seminole Nation v. United States*, 316 U.S. 286, 296–97, 62 S.Ct. 1049, 1054–55, 86 L.Ed. 1777 (1942); *United States v. Creek Nation*, 295 U.S. 103, 55 S.Ct. 681, 79 L.Ed. 1331 (1935); *Pyramid Lake Paiute Tribe of Indians v. United States*, 898 F.2d 1410, 1420 (9th Cir.1990). Although the Secretary also has duties to all United States citizens, "[t]he Secretary's conflicting responsibilities and federal actions taken in the 'national interest' ... do not relieve him of his trust obligations." *See* Memorandum Opinion, at 29 (May 28, 1985) (citing *Navajo Tribe of Indians v. United States*, 364 F.2d 320, 323–24, 176 Ct.Cl. 502 (1966)); *see also* F. Cohen, Handbook for Federal Indian Law, at 227–28 (1982) (federal administrative officials obligated to adhere strictly to standard fiduciary responsibilities to tribes in

---

**2.** As a result of the Ninth Circuit Court's reversal and remand of this Court's Order suspending the leases, Thermal argues that its lease interest is void as a matter of law because the Court's original Memorandum Opinion and Order of May 28, 1985, stands as the law of the case until modified. Western Energy vehemently opposes the theory that Thermal's leases are void, rather than suspended, in the aftermath of the Ninth Circuit Court decision. Western Energy fears that a holding from this Court that Thermal's lease is void under the original decision in this case would necessitate a finding that Western Energy's leases are also void.

Nevertheless, both this Court and the Ninth Circuit Court have recognized the unique status of Western Energy's leases on Tracts M–54711, M–54712, and M–54713. These leases were awarded as "maintenance" tracts to support an existing mining operation and do not entail new mine development, just expansion of ongoing operations. In considering the motions now pending in this action, the Court expresses no opinion with respect to the validity or invalidity of the leases awarded to Western Energy. That issue is not now before the Court, and nothing in this Memorandum Opinion shall be taken to reflect on the status of the "maintenance" tracts.

natural resource disputes).[3]

With these two principles guiding the Court's analysis, the Court now turns more specifically to the pending motions. Thermal and Wesco raise essentially two issues. First, the Court is faced with the question of whether it may and should declare their lease interests void. Second, if the Court does declare Thermal's and Wesco's lease interests void, the Court must determine whether it has the power and whether it ought to order the government to return funds the intervenors paid to secure their defective lease interests.

### A. The Court May Declare the Intervenors' Lease Interests Void

■ As noted above, the scope of Thermal's and Wesco's intervention is strictly limited to addressing the proper remedy for the government's defective lease sale. In granting the Motions for Intervention, the Court determined that these parties had vital interests at stake in determining this remedy. At that time, the intervenors contemplated that they would eventually mine the tracts they had attempted to lease, and therefore, they did not want to completely lose their interests in the tracts on which they had successfully bid. Thermal, Wesco, and Western Energy persuaded this Court that the proper, less draconian remedy for the government's mistakes would be to suspend, rather than void, their lease interests.

Nearly six years have passed since these parties intervened, and they are no closer today to bringing the coal on the Cook Mountain and Coal Creek Tracts to market

than they were in 1985. Instead, they are faced with, among other factors: (1) a Secretary of the Interior who has been struck with an apparent case of paralysis with respect to taking definitive action on the status of their lease interests; (2) an SEIS which strongly suggests that, even if the leases are eventually approved, the intervenors will be faced with substantial mitigation costs to reduce the impacts of new mine development on the Tribe; and (3) the prospect of continued litigation that will almost certainly stretch on for years. It is not surprising, therefore, that Thermal and Wesco now reverse their earlier positions and seek to reinstate the Court's original order voiding the leases with respect to their lease interests on Tracts M–54714 (Thermal) and M–54710 (Wesco).

In essence, by asking this Court to void their lease interests, Thermal and Wesco have adopted the Tribe's original position in this litigation—a position that was vindicated in this Court's original Memorandum Opinion. In moving for this relief, they rely on the fact that the government's failure to comply with the law renders the leases voidable. In short, Thermal and Wesco move the Court to return the case to its status prior to their intervention, except for their request for an order compelling the government to repay monies they deposited to secure their lease interests.

In opposing Thermal and Wesco's motions, the government has not articulated a single persuasive principle which would contradict the Court's conclusion that the lease interests are voidable.[4] The government instead focuses its opposition on the

---

**3.** In *Nevada v. United States,* 463 U.S. 110, 127–28, 103 S.Ct. 2906, 2917, 77 L.Ed.2d 509 (1983), the United States Supreme Court briefly discussed conflicts of interest that may arise in litigation when the government must act both as a fiduciary to an Indian tribe and as an administrator of natural resources pursuant to an act of Congress. If a federal agency acts against a tribal interest in such a situation, the government does not necessarily violate its fiduciary duties. The Supreme Court noted that the "Government does not 'compromise' its obligation to one interest that Congress obliges it to represent by the mere fact that it simultaneously performs another task for another interest that Congress has obligated it by statute to do." *Id.* at 128, 103 S.Ct. at 2917.

Nevertheless, *Nevada* and other Supreme Court precedent cited in the text indicate that the government's obligation to the tribes remains important, and that the government must make some showing that it has seriously considered its fiduciary responsibilities to the tribes when acting against their interests. *See also White Mountain Apache Tribe v. Hodel,* 784 F.2d 921, 925 (9th Cir.), *cert. denied,* 479 U.S. 1006, 107 S.Ct. 644, 93 L.Ed.2d 700 (1986). ("[G]overnment remains under a firm obligation to represent the Tribe's interests forcefully despite its other representative obligations.").

**4.** The government cannot in good faith contend that Thermal's and Wesco's new positions, advocating cancellation of their leases as the proper

second item of relief requested by the Intervenors: the return of the monies they paid to secure their lease interests. To the extent that the Intervenors move for an order invalidating their lease interests in the Coal Creek and Cook Mountain Tracts, therefore, the Court will grant their motions for the reasons set forth in this Court's Memorandum Opinion of May 28, 1985. These reasons include the government's failure to comply with NEPA, the FCLAA, and to fulfill its trust responsibilities to the Tribe.

### B. The Secretary Must Return Intervenors' Lease Payments

Thermal and Wesco also ask this Court to order the Secretary to return the monies they paid to secure their lease interests. The intervenors premise their claims on arguments sounding in equity. The Government strongly opposes this aspect of the pending motions, primarily on technical grounds. After considering the arguments of the parties in relation to the contextual facts of this case, the Court agrees with Thermal and Wesco that they are entitled to return of their money. The Court finds the government's arguments in opposition to be unpersuasive for the following reasons.

### 1. *The Court Has Equity Jurisdiction.*

The Government first argues that Thermal and Wesco have exceeded the scope of the Court's order permitting their intervention because they move to recover money damages from the United States, based on theories sounding in breach of contract. The government argues that, under the Tucker Act, the Court of Claims has exclusive jurisdiction over any action seeking contract damages from the United States in excess of $10,000.00. *See* 28 U.S.C. §§ 1346, 1492.[5] Thermal and Wesco respond that they are seeking restitution based on equitable principles, not damages. The intervenors note that they ask for recovery of only the monies paid, not interest, and they argue, in essence, that the government would be unjustly enriched if it were allowed to keep money paid to secure lease interests made defective by the government's own failure to abide by its responsibilities under law.

To constitute a claim under the Tucker Act, "the claim must be one for money damages against the United States." *Sisseton–Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 596 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 75, 112 L.Ed.2d 48 (1990) (quoting *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983)). Even though a party may seek money as a form of equitable relief, an award of money is not necessarily an award of damages, particularly when "specific monies" are

remedy in this case, do not coincide with the purposes of their intervention. *See* text, pages 1289–1290 *infra.* Moreover, as explained below, the Court and parties cannot wait forever for the Secretary to act on the status of Thermal's and Wesco's leases at some unspecified future date. The Secretary has had ample time to cancel the leases on his own or to add new mitigation measures to the leases in response to the findings in the SEIS. He has not done so. Instead, he has left the parties in a state of "limbo", while all the time enjoying the benefits of the monies paid over by the intervenors to secure lease interests made defective by the Secretary's own failure to comply with the law. Thus, issues concerning the status of the intervenors' leases are certainly ripe for judicial review in equity, if not in law. *See* text, pages 1290–1291, *infra.*

**5.** The Court notes that the government does not challenge this Court's original jurisdictional determination. In its prior Memorandum Opinion, before the intervention of Thermal, Wesco, and Western Energy, the Court found that it had jurisdiction over the Tribes' challenge of the lease sales under 28 U.S.C. §§ 1331, 1332, 1361, and 1362. Moreover, because the Tribe sought both judicial review of an agency action and equitable relief, the Court noted that the government had waived its sovereign immunity pursuant to the Administrative Procedure Act, 5 U.S.C. § 702. *See* Memorandum Opinion, at 7–8 (May 28, 1985). The intervention by Thermal, Wesco, and Western Energy did not affect this jurisdictional determination because the scope of the intervention concerned only the proper remedy for the government's failure to comply with law. *See* Opinion and Order, at 5–6 (Oct. 8, 1985). As long as the relief sought by the intervenors concerns this remedy and asks for no further relief, the Court retains jurisdiction over the remedial solutions suggested by the Intervenors.

sought. *Id.; see also Bowen v. Massachusetts,* 487 U.S. 879, 891–95, 108 S.Ct. 2722, 2731–32, 101 L.Ed.2d 749 (1988) (recognizing that a judicial remedy requiring one party to pay money to another is not sufficient basis on which to conclude that the action seeks money damages). In the case at bar, the intervenors are seeking only restitution of specific rental and bonus payments made to the government to secure their lease interests. They are seeking neither interest on those payments nor other compensation associated with their loss of use of the monies. Thermal and Wesco do not contend that the Secretary breached any contracts with them. Rather, they seek relief based on the government's failure to comply with the law and its continued benefit from that failure through retention of monies belonging to the intervenors. After reviewing these facts, the Court finds that the intervenors' motions are not based in contract, but, instead, are founded on the quasi-contract principles of restitution and unjust enrichment. Thus, the Tucker Act does not apply to this case.

▮ Furthermore, this Court has jurisdiction to consider claims sounding in quasi-contract. "[A]s a matter of federal common law," private parties may maintain actions for equitable relief against the government, based on the "doctrine of unjust enrichment." *A.T.C. Petroleum, Inc. v. Sanders,* 860 F.2d 1104, 1113 (D.C.Cir. 1988). Where a federal common law claim seeking equitable relief is coupled with a waiver of sovereign immunity under the Administrative Procedure Act, federal district courts have original jurisdiction to hear such claims. *Bedoni v. Navajo–Hopi Indian Relocation Commission,* 854 F.2d 321, 325 (9th Cir.1988), *reconsidered and modified on other grounds,* 878 F.2d 1119 (9th Cir.1989). In addition, "federal common law is part of the 'laws of the United States' for the purpose of § 1331 jurisdiction." *North Side Lumber Co. v. Block,* 753 F.2d 1482, 1484 (9th Cir.), *cert. denied,* 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 and 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985) (citing *Illinois v. Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972)); *see also State of Ten-*

*nessee ex rel. Leech v. Dole,* 749 F.2d 331 (6th Cir.1984), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985) (holding that § 1331(a) alone gives district courts jurisdiction to decide federal common law claims). Thus, the Court has jurisdiction to consider Thermal's and Wesco's claims for restitution.

### 2. *The Government Must Return the Intervenors' Monies.*

"At the heart of an action based on quasi-contract lies a claim of unjust enrichment and such quasi-contract liability is dictated by the needs of justice and fairness." *United States v. California,* 932 F.2d 1346, 1350 (9th Cir.1991). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of the Law, Restitution § 1, at 12 (1937).

> A cause of action for restitution is a type of the broader cause of action for money had and received, a remedy which is equitable in origin and function. *The claimant to prevail must show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it.*

*Atlantic Coast Line Railroad Co. v. Florida,* 295 U.S. 301, 309, 55 S.Ct. 713, 716, 79 L.Ed. 1451 (1935) (citations omitted) (emphasis supplied); *see also* 77 C.J.S. *Restitution,* at 322 (1952 & Supp.1991); 66 Am. Jur.2d *Restitution and Implied Contracts* § 3 (1973 & Supp.1991) ("Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another."). Finally, "[a] person obtains restitution when he is restored to the position he formerly occupied either by return of something he formerly had or by the receipt of its equivalent in money." Restatement of the Law, Restitution § 1 *Comment (a),* at 12 (1937).

▮ In the instant case, the government received money for coal leases, which were made invalid by the government's own failure to comply with law. Because of this failure, Thermal and Wesco have not received the benefit of their bargain with the

government, and, because the lease interests are void, the intervenors never will receive such benefits. Considerations of equity and fairness therefore unequivocally require that this Court order the government to refund Thermal's and Wesco's bonus and rental payments. Otherwise, the government would continue to profit from its own mistakes in leasing federal coal at the expense of Thermal and Wesco, who bid on the Cook Mountain and Coal Creek Tracts in good faith and, presumably, with the assumption that even if the government had made some errors in the leasing process, that these errors could be corrected without voiding the leases.

### 3. Intervenors Do Not Need to File a New Complaint.

In ruling that the government must make restitution to Thermal and Wesco, the Court rejects the government's other arguments against awarding such relief. First, the government argues that the motions are not properly presented to the Court, because they represent new claims for relief that have never been properly pled. As noted above, the Court permitted Thermal and Wesco to intervene solely to help determine the proper remedy with respect to the dispute between the Tribe and the Secretary. According to the government, Thermal's and Wesco's motion for return their bonus and rental payments presents an entirely new issue, never before raised and irrelevant to the dispute between the government and the Tribe. The government therefore asserts that the motions exceed the scope of Thermal's and Wesco's role as intervenors in this case, and maintains that Rule 3, Fed.R.Civ.P., requires Thermal and Wesco to file a new action for equitable relief.

In reply, Wesco and Thermal state that their requests are within the scope and purpose of the intervention because their proposed restitution is directly related to the Court's determination of the fair and proper relief in this case. Wesco individually argues that even if its attempt to obtain restitution is procedurally defective, it should be permitted to file and amended complaint in intervention setting forth a

claim for such relief. _see_ Rule 15, Fed. R.Civ.P.

In weighing the government's position, the Court must necessarily refer to the considerations underlying its order permitting Thermal and Wesco to intervene. The Court granted the Motions to Intervene, pursuant to Rule 24(a)(2), Fed.R.Civ.P., because it determined (1) that the nature of the relief fashioned in this case "directly affects the lessees" and (2) that the "federal defendants may not adequately represent each of the intervenor's interests when they outline the considerations and circumstances which the Court should examine before relief is granted." _See_ Opinion and Order, at 4–5 (Oct. 8, 1985) (granting Motions to Intervene).

All the factors leading the Court to grant the Motions to Intervene in 1985 also exist in 1991. For example, the particular relief granted by the Court today—voiding the lease interests—directly affects the Intervenors. Additionally, the federal defendants obviously do not adequately represent the interests of Thermal and Wesco because the government opposes the intervenors' motions for return of the bonus and rental payments. Thus, Thermal and Wesco currently have as complete a right to intervene and pursue their own interests, as they had in 1985. Finally, the order permitting the lessees to intervene does not place any restrictions on the type of relief they may petition to Court to grant, so their request for return of monies paid, as a component of the proper relief in this case, is appropriately made.

In short, although Thermal and Wesco have changed their positions with respect to the proper remedy, this change in position does not require the filing of either a new cause of action or a supplemental complaint-in-intervention. The Court has always had broad equitable powers to shape an appropriate remedy for the government's failure to abide by legal restrictions governing the Powder River Coal Sale. Thermal and Wesco were permitted to intervene in this litigation to recommend to the Court how best to shape this remedy to protect their vital interests. In requesting

the return of money paid to secure leases that have now been declared void, Thermal and Wesco are therefore acting well within the scope of the Court's order permitting their intervention.

### 4. *The Matter is Ripe for Judicial Review.*

■ The government maintains that Thermal's and Wesco's motions impermissibly anticipate actions that will be taken by the Secretary with respect to changes he may make to the leases, pursuant to findings contained in the SEIS. As noted previously, the Secretary has under advisement the findings of the SEIS, and must make a decision about whether to modify or cancel the leases based on these findings. Until the Secretary acts, the government asserts that any action taken by this Court would be premature, and the Court would be replacing the Secretary's judgment of the proper remedy for the defective lease sales with its own, which is not permitted by the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

The intervenors respond that considerations of equity and fairness demand action in this case, pointing out that the Secretary has had the final SEIS before him for over a year, yet he still has not made any decision concerning modification of the leases to address the impacts on the Tribe. In the mean time, the government reaps the benefits of Thermal's and Wesco's bonus and rental payments, totalling over $2.7 million. Secondly, the intervenors note that the facts of this case make it patently clear that the Secretary will have to make changes to the terms of their leases to protect the Tribe, which would constitute impermissible, unilateral changes in the lease instruments. According to the lessees, if the Secretary did not make such changes, or void the lease altogether, he would violate his trust responsibility to the Tribe. Thus, the government's concern that the Court will substitute its judgment for the Secretary's judgment is "academic" in this case: The Secretary has no choice but to make changes, so the intervenors' motions are timely made.

The government has offered no credible explanation for the Secretary's failure to act on the SEIS in a timely manner. The plain words of Court's order of compelling the Secretary to prepare the SEIS unambiguously charge the Secretary with the responsibility for making a decision on the status of the leases:

"2. Upon completion of the supplemental EIS, the Secretary shall reconsider whether all leases ... should have been issued and whether additional mitigation measures should be imposed. If the Secretary concludes that the leases should not have been issued, he shall rescind them and halt all operations. If the Secretary concludes that the leases should be approved, he shall issue a decision supporting his conclusion and order reinstatement of the leases."

*See* Opinion and Order, at 7 (Oct. 8, 1986). This portion of the Court's order has never been appealed and remains in effect. Nevertheless, the government has not indicated that such a decision on the status of Thermal's and Wesco's lease interests will be forthcoming anytime soon.

Meanwhile, the government enjoys the benefits of retaining lease and rental payments made by the intervenors for lease interests that have been declared defective, and may continue to enjoy these benefits indefinitely at the expense of the intervenors. Equity will not permit the Secretary to delay in this manner. The government is clearly unjustly enriched by its failure to act. "A person is unjustly enriched if the retention of the benefit would be unjust." Restatement of the Law, Restitution § 1 *Comment (a)*, at 12 (1937). The Court cannot in good conscience sanction the government's indefinite retention of the intervenors' monies, while the Secretary bides his time without any indication that he intends to reach a decision on the status of the leases in the near future.

In light of such considerations, the Court finds that the question of the status of Thermal's and Wesco's. lease interests is ripe for review in equity, if not in law. Accordingly, the Court rejects the government's argument that the Secretary should

be permitted to decide the proper remedy for the defective lease sale. The Secretary has had his opportunity to do so but has failed to take advantage of it. Equity now demands that the Court act to protect the rights of the intervenors.

### 5. The Doctrine of Lis Pendens is Inapposite.

██ Finally, the government opposes the intervenors' motion for relief based on the doctrine of *lis pendens*. The government notes that Thermal and Wesco bid on the tracts with full knowledge of this litigation, and they were specifically advised at the lease sale that all leases were subject to the outcome of this litigation. Thus, the government argues that both Thermal and Wesco are bound by the doctrine of *lis pendens* because they knew of the potential problems with the leases at the time of bidding, yet they gambled that the government had complied with NEPA, the FCLAA, and the government's trust responsibilities to the Tribe.

The intervenors contend, however, that the government has stretched the principles of *lis pendens* to the breaking point in opposing their motions. In short, the government is arguing that it is entitled to a $2.7 million windfall as a result of its own failure to comply with NEPA, the FCLAA, and its trust responsibilities and its subsequent failure to act diligently to remedy its previous errors. The intervenors note that an order preserving this windfall would be unjust. If the lease is invalid, the intervenors contend that they are entitled to be returned to the *status quo ante.*

The Court agrees with the intervenors. Although Thermal and Wesco may have been placed on notice of potential defects in the Powder River Coal Sale, when they bid on the Cook Mountain and Coal Creek tracts, they were not advised that the Secretary would fail to comply with his obligations to correct such defects in a prompt and timely manner. The doctrine of *lis pendens* cannot be used by the government as a means to avoid the consequences of its own failure to correct its original mistakes. While Thermal and Wesco may have gambled on the status of the lease interests they obtained at the 1982 lease sale, the intervenors could not have predicted that the Secretary would fail to act with reasonable diligence to correct his own errors once the errors were identified. As a matter of fundamental fairness, therefore, the intervenors should not have to pay the price of the Secretary's own lack of diligence in shaping the proper remedy for his previous mistakes.

### Conclusion

This Court's previous ruling, that the government's lease sale of federal coal tracts adjacent to the Northern Cheyenne Reservation violated NEPA, the FCLAA, and the government's trust responsibilities to the Tribe, stands as the law of the case, and has not been challenged by any party. Only the proper remedy for the defective lease sale remains at issue in this case. In part because of the Secretary's own inability or unwillingness to remedy his own mistakes, equitable principles require this Court to pass judgment once more on the relief to which the Tribe and the intervenors are entitled. After considering all the facts and after balancing the equities, the Court must conclude that the interests of justice and fairness are best served by voiding Thermal's and Wesco's lease interests and by ordering the government to repay the bonus and rental these intervenors paid to secure their defective lease interests.

Accordingly,

IT IS ORDERED that the sale of the Coal Creek Tract (Tract M–54710) to Intervenor Wesco Resources, Inc., and the sale of the Cook Mountain Tract (Tract M–54714) to Intervenor Thermal Energy Company, at the 1982 Powder River Coal Sale be and hereby are declared void.

IT IS FURTHER ORDERED that the United States shall make immediate restitution to Thermal Energy Company in the amount of $2,688,864.00, the amount paid by Thermal Energy Company to the United States in bonus and rental payments to secure its defective lease interest.

IT IS FURTHER ORDERED that the United States shall make immediate restitution to Wesco Resources, Inc. in the amount of $73,343.00, the amount paid by Wesco Resources, Inc. to the United States in bonus and rental payments to secure its defective lease interest.

The Clerk is directed forthwith to notify counsel for the respective parties of the making of this Order.